|  |  |  |
|---|---|---|
| _____ | ) | |
| WAGGITY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 25-cv-9627 |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| BARKBOX, INC. and | ) | |
| BARK, INC. | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND VIOLATIONS OF NEW YORK'S GENERAL BUSINESS STATUTE**

Plaintiff Waggity, LLC ("Waggity" or "Plaintiff") complain and allege against Bark, Inc. and its subsidiary Barkbox, Inc. (collectively, "Barkbox" or "Defendants") as follows:

**NATURE OF THE DISPUTE**

1.     This action arises from Defendants' willful and egregious infringement of Waggity's federally registered BARKBELLY® trademark. Despite being aware of Waggity's exclusive trademark rights for the mark in connection with dog treats, Defendants nevertheless have infringed these rights by orchestrating an aggressive national rollout of competing dog food and treats marketed under the confusingly similar and infringing  brand.

2.     Defendants' sale of these products is all the more egregious given that Defendants adopted the infringing mark *after* Defendants approached Waggity to purchase the BARKBELLY® trademark and *after* the U.S. Patent and Trademark Office refused Defendants' trademark applications for their infringing mark because they were confusingly similar to

Waggity's BARKBELLY® trademark. Defendants' actions are willful, intentional, and damaging to Waggity and its distinctive BARKBELLY® trademark.

3.      Accordingly, Waggity now brings this action against Defendants for trademark infringement, unfair competition, false designation of origin, and for violations of New York State common law and related causes of action.

## THE PARTIES

4.      Waggity is a limited liability company organized under the laws of the State of Delaware with a place of business at 222 Purchase Street, Suite 321, Rye, NY 10580.

5.      On information and belief, Defendant Bark, Inc. is a corporation organized under the laws of the State of Delaware with a place of business at 221 Canal Street, New York, NY 10013.

6.      On information and belief, Defendant Barkbox, Inc. is a corporation organized under the laws of the State of Delaware with a place of business at 221 Canal Street, New York, NY 10013.  On information and belief, Barkbox, Inc. also has an address at 120 Broadway, Floor 12, New York, NY 10271, as reflected on Defendants' website.

## JURISDICTION AND VENUE

7.      This lawsuit arises under the laws of the United States, namely, the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court has subject-matter jurisdiction over these federal claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.      This lawsuit also arises under the common law of the State of New York. This Court has supplemental subject-matter jurisdiction over these state-law claims under 28 U.S.C. §

1367, because these claims are so related to the federal claims that they form part of the same case or controversy and would ordinarily be expected to be tried in a single judicial proceeding.

9.      This Court has personal jurisdiction over Defendants because Defendants, having their headquarters or main office located within this district, are domiciled in this district. In addition, the Court has personal jurisdiction over Defendants because Defendants have committed tortious acts within this district and are engaging in advertising, promotion and sales directed towards residents of this district, and Plaintiff has sustained injuries to its interests in this district, each as further described herein.

10.     Venue is proper in this District under 28 U.S.C. § 1391, because this is a District in which Defendants reside and in which a substantial part of events or omissions giving rise to the causes of action herein occurred.

**FACTUAL BACKGROUND**

**Waggity's BARKBELLY® Brand and Trademarks**

11.     Waggity markets and sells delicious, healthy, high quality dog treats under its BARKBELLY® brand name. Waggity's flagship product, BARKBELLY® bars, is a plant-based jerky snack made with sweet potato, apple, blueberry, and other superfoods. Waggity's BARKBELLY® bars are made in the United States using sustainable and upcycled certified ingredients. BARKBELLY® bars contain no artificial flavors, colors, or preservatives and are free of corn, wheat, soy, and nuts—increasingly valuable qualities given the rise of gluten and nut allergies.

12.     The BARKBELLY® mark is conceptually strong and inherently distinctive. In addition, for years, Waggity has invested significant time, effort, and money in advertising and selling BARKBELLY® bars, and related and ancillary products such as pet toys, apparel and other

goods. In connection with these business activities, Waggity extensively has used, and continues to use, the trademark BARKBELLY alone and in connection with other words and designs (the "BARKBELLY Marks"). Since at least December 10, 2023, Waggity has continuously sold pet treats and related goods under the BARKBELLY Marks in this judicial district and in interstate commerce in the United States.

13.     Waggity has used and continues to use the BARKBELLY Marks in connection with pet treats and related goods, such that the BARKBELLY Marks are strong and inherently distinctive. Waggity's packaging, labels and marketing materials are prominently branded with the BARKBELLY Marks, thereby enhancing the trademarks' consumer recognition and goodwill. An example of Waggity's use of the BARKBELLY Marks on product packaging for the



BARKBELLY® bars follows:                                                              .

14.     Waggity's goods offered and sold under the BARKBELLY Marks have been, and continue to be, exclusively marketed and sold in this judicial district and in interstate commerce in the United States. Further, Waggity has extensively promoted its goods in association with the BARKBELLY Marks both in New York and in interstate commerce in the United States. Waggity has extensively promoted the BARKBELLY Marks through advertisements and promotions that

prominently feature the mark in association with its goods. As a result of Waggity's efforts, consumers have come to associate the BARKBELLY Marks with Waggity and its high quality products.

15.    By reason of such advertising, promotion, and sale of Waggity's goods under the BARKBELLY Marks, Waggity has developed substantial consumer recognition and goodwill in connection with the BARKBELLY Marks. The BARKBELLY Marks have become, through widespread and favorable acceptance and recognition, assets of substantial value as symbols of Waggity, its quality products, and its goodwill.

16.    By virtue of its extensive use and promotion of the BARKBELLY Marks in association with Waggity's goods, Waggity has established strong common law rights in the BARKBELLY Marks that long predate Defendants' infringing actions.

17.    In addition to its common law rights, Waggity is the owner of United States Trademark Registration No. 7,565,678 for the trademark BARKBELLY® registered for use in connection with edible pet treats, pet toys, apparel, and various other goods (the "'678 Registration"). Waggity applied for the '678 Registration on March 29, 2021, which issued on November 12, 2024. A true and correct copy of the registration certificate and related information taken from the electronic database records of the U.S. Patent and Trademark Office showing the current status and title of the '678 Registration is attached hereto as **Exhibit A**. The '678 Registration is valid, subsisting and in full force and effect as reflected in the printout contained in Exhibit A. Accordingly, the '678 Registration is evidence of Waggity's ownership of and exclusive right to use the trademark BARKBELLY in commerce for the goods covered by the registration.

18.    Waggity is also the owner of pending U.S. Trademark Application Serial No. 98/800,270 for the mark BARKBELLY for use in connection with delivery services featuring pet

products, namely, pet treats, pet apparel, pet toys, and general pet supplies (the "'270 Application"). The '270 Application was filed on October 14, 2024.

19.     Waggity's registered and common law trademark rights in the BARKBELLY Marks long predate Defendants' infringing actions complained of herein.

**Defendants' Covert Offers to Purchase Waggity's BARKBELLY Marks**

20.     On September 26, October 1, and October 7, 2024, an attorney for Waggity was contacted by Rob Schutz. On information and belief, Mr. Schutz was, for many years, the Vice President of Growth at Bark, among other roles at Bark. Mr. Schutz stated that his "client" was interested in purchasing Waggity's rights in the BARKBELLY® trademark and provided a link to the U.S. Patent and Trademark Office Trademark Status & Document Retrieval page for Plaintiff's then-pending '678 Registration.

21.     On information and belief, the "client" that Mr. Shutz was purporting to represent in the offer to purchase Waggity's rights in the BARKBELLY Marks was Defendants.

22.     Waggity was not interested in selling its rights in the BARKBELLY Marks, which was communicated to Mr. Schutz by Waggity's counsel. In response, Mr. Schutz asked if his client could make an offer and indicated that his client was a serious client. Waggity's counsel reiterated that Waggity was not interested in selling but stated that Waggity would consider a serious offer.

23.     On October 7, 2024, Mr. Schutz's client offered Waggity $50,000 for the BARKBELLY Marks, which Waggity declined.

24.     On October 14, 2024, Mr. Schutz's client offered Waggity $85,000 for the BARKBELLY Marks (with a $0 royalty-free, perpetual, non-cancellable license back to Waggity), which Waggity declined.

25.     Rather than further pursuing negotiations to purchase Waggity's rights in the BARKBELLY Marks, Mr. Schutz stated that his client elected to "move on to other options."

**Barkbox's BARK IN THE BELLY Applications**

26.     Approximately one month after Waggity rejected Defendants' bids to purchase Waggity's rights in the BARKBELLY Marks, on November 22, 2024, Barkbox filed four U.S. intent-to-use Trademark Applications to register the mark BARK IN THE BELLY in connection with edible pet treats, among various other goods and services. Those applications are U.S. Trademark Application Serial Nos. 98/867,631, 98/867,640, 98/867,650, and 98/867,670 (collectively, "the Barkbox Applications").

27.     Each and every one of the Barkbox Applications has been refused registration by the United States Patent and Trademark Office (the "USPTO"), pursuant to 15 U.S.C. § 1052(d), on grounds of likelihood of confusion with Waggity's prior '678 Registration for the mark BARKBELLY and/or '270 Application for the mark BARKBELLY.

28.     On April 25, 2025, the USPTO refused Barkbox's U.S. Trademark Application Serial No. 98/867,631 to register BARK IN THE BELLY for use in connection with dietary supplements for pets, because Barkbox's applied-for BARK IN THE BELLY mark and Waggity's prior BARKBELLY® trademark are confusingly similar and are used or intended for use on related goods. True and correct copies of the U.S. Trademark Application Serial No. 98/867,631 and the refusal of the application as taken from the electronic database records of the USPTO are attached hereto as **Exhibit B**.

29.     On April 25, 2025, the USPTO refused Barkbox's U.S. Trademark Application Serial No. 98/867,640 to register BARK IN THE BELLY for use in connection with pet feeding and drinking bowls, pet brushes, pet feeding dishes, and automatic pet feeders, because Barkbox's

applied-for BARK IN THE BELLY mark and Waggity's prior BARKBELLY® trademark are confusingly similar and are used or intended for use on related goods. True and correct copies of the U.S. Trademark Application Serial No. 98/867,640 and the refusal of the application as taken from the electronic database records of the USPTO are attached hereto as **Exhibit C**.

30.    On May 28, 2025, the USPTO refused Barkbox's U.S. Trademark Application Serial No. 98/867,650 to register BARK IN THE BELLY for use in connection with pet food, edible pet treats, and edible dental chews for dogs, because Barkbox's applied-for BARK IN THE BELLY mark and Waggity's prior BARKBELLY® trademark are confusingly similar and are used or intended for use on identical or related goods. True and correct copies of the U.S. Trademark Application Serial No. 98/867,650 and the refusal of the application as taken from the electronic database records of the USPTO are attached hereto as **Exhibit D**.

31.    On May 28, 2025, the USPTO refused Barkbox's U.S. Trademark Application Serial No. 98/867,670 to register BARK IN THE BELLY for use in connection with retail store services featuring pet products, retail on-line ordering services featuring pet products, and mail order services featuring pet products, because Barkbox's applied-for BARK IN THE BELLY mark and Waggity's prior BARKBELLY® trademark are confusingly similar and are used or intended for use on related goods. True and correct copies of the U.S. Trademark Application Serial No. 98/867,670 and the refusal of the application as taken from the electronic database records of the USPTO are attached hereto as **Exhibit E**.

**Defendants' Launch the  Brand<br>Despite Actual Knowledge of Waggity's Prior Rights**

32.    Upon information and belief, nearly one year after Defendants' failed attempt to purchase Waggity's senior rights to the BARKBELLY Marks, and four months after the USPTO

issued refusals of Barkbox's applications for its confusingly similar BARK IN THE BELLY marks, on or around August 26, 2025, Barkbox launched a new line of pet food and treat products (the "Accused Products") under the BARK IN THE BELLY mark shown as follows: **BARK in the belly** (collectively with other stylizations and the word mark BARK IN THE BELLY, the "Accused Mark" or "BARK IN THE BELLY Mark").

33. Despite Defendants' actual knowledge of Waggity's BARKBELLY Marks, and despite the USPTO informing Defendants of the likelihood of confusion between Waggity's BARKBELLY Marks and Defendants' BARK IN THE BELLY Mark, Defendants deliberately and intentionally created a stylized version of the Accused Mark that clearly emphasized the dominant and distinctive overlapping terms BARK and BELLY. Moreover, Defendants deliberately added a connecting design element between the terms BARK and BELLY, resulting in an image that emphasizes the conjoined terms BARK and BELLY and minimizes (nearly to the point of obscurity) the non-distinctive terms "in" and "the." See: **BARK in the belly**.

34. Not surprisingly, some consumers encountering the BARK IN THE BELLY Mark fail to notice the words "in the" at all: https://www.tiktok.com/t/ZP8DX1dkp/ and https://www.tiktok.com/t/ZP8D4QNf2/ (last visited November 10, 2025).

35. Defendants' launch of the Accused Products under the Accused Mark has been extensively advertised and highly publicized, including in industry publications and widespread marketing campaigns. *See, e.g.*, https://tombras.com/news/tombras-launches-bark-in-the-belly-campaign; https://www.petfoodprocessing.net/articles/19613-bark-launches-dog-food-line; https://thedieline.com/tombras-puts-some-bite-behind-the-design-for-bark-in-the-belly/;

https://www.adsoftheworld.com/campaigns/bark-in-the-belly (each last visited on November 10,

2025). See, for example, some of Defendants' advertisements as shown below:





36.     Defendants advertise, market, offer for sale, and sell the Accused Products using

the Accused Mark, without authorization or approval of Plaintiff. For example, and without

limitation, Defendants use the Accused Mark as the name of their dog food and dog treat products,

as well as in a prominent trademark manner on the product packaging for the Accused Products.



An example of such use follows:                                    .

37.     Defendants are advertising, promoting, and offering for sale the Accused Products in commerce in competition with Waggity. Defendants offer for sale and sell their products in this judicial district as well as in other states. Defendants offer and sell their products to the same or overlapping consumers as Waggity, through the same or overlapping trade channels, in some of the same markets.

38.     On information and belief, Defendants' Accused Products are made with ingredients that contain potential allergens that are not found in the legitimate BARKBELLY products.

39.     In the very short time since Defendants' launched the Accused Products under the Accused Mark, Defendants have aggressively advertised, marketed, and sold their products across a wide variety of channels in an attempt to saturate the market. These platforms include third-party e-commerce platforms such as Chewy and Amazon.com. On information and belief, Defendants also offer and sell the Accused Products through a monthly subscription delivery service.

40.     Defendants also sell the Accused Products under the Accused Mark on their website at https://bark.co. Defendants' customers have left reviews and comments regarding the Accused Products using Waggity's BARKBELLY Marks. Rather than dispel any customer confusion,

Defendants have engaged with and corresponded with the consumers who use the BARKBELLY Marks to describe the Accused Products, thereby allowing and promoting the confusion, as shown in the below screen shots from https://bark.co/products/belly-food-chicken-ancient-grains#:~:text=Betty%20S.,customers%20for%20several%20years%20now (captured Nov. 10, 2025).



41.     Defendants advertise and promote the Accused Products using the Accused Mark on a variety of social media platforms as well, including but not limited through an extensive network of influencer partners. For example, Defendants invited influencer partners to a "Farmer's Barket" pop-up event that Defendants hosted in New York on September 27, 2025, where Defendants promoted the Accused Products using the Accused Mark, including by providing samples of the Accused Products to consumers. Defendants' influencer partners created promotional content at the event for social media. Defendants' influencer partners advertised and

promoted the Accused Products using the Accused Mark on social media, including as depicted in the snapshots below.



https://www.instagram.com/reel/DPRHar0jthg/ (captured Oct. 14, 2025).



https://www.instagram.com/reel/DPPi5UcjebY/?igsh=MWl6eHh6Y2dxeTN6eg%3D%3D

(captured Oct. 14, 2025).

42. Defendants' influencer partners also advertised and promoted the Accused Products on social media using *Plaintiff*'s BARKBELLY Marks rather than the BARK IN THE BELLY Mark.

43.     For example, in video content on Instagram, a popular influencer, @zarahkelleher, who has over 375,000 followers on Instagram, promoted the Accused Products using the name "Barkbelly treats."

44.     In another example, Defendants' influencer partner @kelseybarberio, who has over 17,500 followers on Instagram, posted video content to her Instagram promoting the Accused Products by referring to them as Defendants' "Barkbelly line."

45.     Another influencer partner of Defendants, @pawrudd, who has over 506,000 followers on TikTok, promoted the Accused Products on TikTok, referring to the Accused Products in the caption as "dog food called bark belly," as depicted in the below snapshot.



https://www.tiktok.com/@pawrudd/video/7554137747926076686?_r=1&_t=ZP-90GxVi25Zip

(captured Oct. 14, 2025).

46.     Search engine results for "barkbelly dog food" now list Defendants' Accused

Products and industry news about Defendants' infringing products before the legitimate

BARKBELLY treats.   See **Exhibit F** containing a web capture of search engine results.

47.     Defendants are offering for sale and selling the Accused Products within this

judicial district, as well as in other areas in interstate commerce. Defendants have promoted,

distributed and/or sold, and intend to promote, distribute and/or sell, the Accused Products, among other products, in this judicial district. Defendants' unlawful acts have occurred, and are continuing to occur, in this district and in interstate commerce, and were directed to cause, have caused, and are continuing to cause, injury to Waggity within this district.

48.     Defendants' Accused Mark is confusingly similar to the BARKBELLY Marks. Defendants' use of the Accused Mark in connection with the promotion and sale of the Accused Products is likely to cause confusion as to the source or origin of Defendants' products, and is likely to mislead consumers, all to Waggity's damage.

49.     The products that Defendants sell under the Accused Mark are identical or closely related to those that Waggity sells under the BARKBELLY Marks and offered to the same classes of purchasers.

50.     Defendants' use of the Accused Mark, as hereinabove pleaded, is likely to cause confusion in the minds of the public and is likely to mislead and deceive purchasers. The public, upon seeing the Accused Products sold under the Accused Mark, is likely to believe that the products originate with, or have some connection with, Waggity.

51.     Alternatively, or in addition, the opposite is also true.  Given the extensive advertising campaign and significant resources of Defendants, the public may encounter the Defendants' Accused Mark first, and then when encountering the original BARKBELLY Marks, may mistakenly believe that Waggity's products originate with, or have some connection with, Defendants.  This reverse confusion is likewise likely to cause confusion in the minds of the public and is likely to mislead and deceive purchasers.

52.     Defendants have deliberately and willfully engaged in said unlawful activity despite having constructive knowledge of Waggity's federal registration of the BARKBELLY

trademark, as provided under Section 22 of the Lanham Act, 15 U.S.C. § 1072, and, upon information and belief, despite having actual knowledge of Waggity's use and registration of the BARKBELLY Marks.

53.     As a result of Defendants' actions, Waggity has been and is continuing to be damaged in an amount that is and will be difficult to determine. Waggity has suffered irreparable injury to its goodwill and its business reputation and will continue to suffer irreparable injury and harm unless and until Defendants are enjoined by this Court from further violation of Waggity's rights alleged herein.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. §1114**

54.     Waggity repeats and realleges Paragraphs 1 through 53.

55.     Plaintiff owns U.S. Trademark Registration No. 7,565,678 for the mark BARKBELLY covering edible pet treats, among various other goods and services.

56.     Plaintiff's priority in U.S. Trademark Registration No. 7,565,678 is at least as early as March 29, 2021, which predates Defendants' use of the BARK IN THE BELLY Mark by several years.

57.     Defendants' Accused Mark is confusingly similar to Waggity's federally registered BARKBELLY trademark and are used in connection with the same or closely related goods. As a result, Defendants' use of the Accused Mark in connection with the Accused Products are likely to cause confusion, mistake and to deceive as to the origin, sponsorship or approval of Defendants' products, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     Likewise, because of Defendants' much larger size and extensive advertising, reverse confusion may also occur, namely, that Defendants' use of the Accused Mark in connection

with the Accused Products is likely to cause confusion, mistake and to deceive as to the origin, sponsorship or approval of Plaintiff's products, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Defendants have selected and launched the Accused Products under the Accused Mark despite receiving actual notice of Waggity's federally registered rights and despite having constructive notice of Waggity's rights under its registration, as provided by Lanham Act Section 22, 15 U.S.C. § 1072.

60.     Defendants' infringement has caused and will continue to cause substantial and irreparable damage and injury to Waggity and the public, for which damage and injury Waggity has no adequate remedy at law.  Unless and until enjoined by this Court, Defendants will continue to engage in its infringing actions, and to trade upon and injure Waggity's reputation and goodwill.

61.     In addition, Defendants' aggressive campaign has flooded the market with millions of dollars in advertisements and products bearing the Accused Mark which are causing immediate and extensive injury to Waggity.  Unless and until the Court orders corrective advertising, the public will continue to be confused as the result of Defendants' infringing actions.

62.     Waggity has been and will continue to be damaged as a result of Defendants' infringement, entitling it to recovery of damages and a disgorgement of Defendants' profits from its infringing activities, in an amount to be determined at trial and to be trebled, in accordance with 15 U.S.C. § 1117.

63.     In view of the deliberate and willful nature of Defendants' activities, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Waggity to recover its reasonable attorneys' fees.

**COUNT II**

## FEDERAL FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION AND PASSING OFF
## 15 U.S.C. §1125(a)

64.     Waggity repeats and realleges Paragraphs 1 through 63.

65.     Defendants are using in commerce the Accused Mark in connection with the Accused Products with full knowledge of Waggity's prior use and federally registered and unregistered rights in the BARKBELLY Marks for the same or similar products.

66.     Defendants' actions are likely to cause confusion, mistake, and/or deception among the relevant public, including consumers, as to the affiliation, connection, or association between Defendants and Waggity, and/or as to the origin, sponsorship, or approval of Defendants' and/or Waggity's products and/or commercial activities. Defendants' activities constitute trademark infringement, false designation of origin, passing off, and unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Defendants' false designation of origin and unfair competition has caused and will continue to cause substantial and irreparable damage and injury to Waggity and the public, for which damage and injury to Waggity has no adequate remedy at law.  Unless enjoined by this Court, Defendants will continue to engage in their wrongful conduct, and to trade upon and injure Waggity's reputation and goodwill.

68.     In addition, Defendants' aggressive campaign has flooded the market with millions of dollars in advertisements and products bearing the Accused Mark which are causing immediate and extensive injury to Waggity. Unless and until the Court orders corrective advertising, the public will continue to be confused as the result of Defendants' infringing actions.

69.     Waggity has been and will continue to be damaged as a result of Defendants' conduct, entitling it to recovery of damages and a disgorgement of Defendants' profits from its

wrongful activities, in an amount to be determined at trial and to be trebled, in accordance with 15 U.S.C. § 1117.

70. In view of the deliberate and willful nature of Defendants' activities, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Waggity to recover its reasonable attorneys' fees.

**COUNT III**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**UNDER COMMON LAW**

71. Waggity repeats and realleges Paragraphs 1 through 70.

72. The above-cited acts of Defendants constitute trademark infringement and unfair competition in violation of Waggity's rights under the common law of the State of New York.

73. The BARKBELLY® Mark is strong and inherently distinctive. Plaintiff has continuously used the BARKBELLY® Mark in connection with the marketing, promotion, and sale of edible pet treats, among various other goods and services, in the State of New York since at least as early as December 2023 and prior to Defendants' advertisement, promotion and use of the Accused Mark for dog food and dog treats.

74. Defendants' use of the Accused Mark for dog food and dog treats is likely to create confusion as to the source of Defendants' products. Specifically, Defendants' actions are likely cause confusion, mistake, and/or deception among the relevant public, including consumers, as to the affiliation, connection, or association between Defendants and Waggity, and/or as to the origin sponsorship, or approval of Defendants' and/or Waggity's products and/or commercial activities.

75. Defendants' acts were in bad faith, with full knowledge of Plaintiff's senior trademark rights.

76.     As a result of Defendants' above-described conduct, Waggity has suffered economic injury in an amount to be proven at trial, as well as reputational injury and erosion of the goodwill in the BARKBELLY Marks, for which there is no adequate remedy at law.

77.     Waggity is entitled to recover actual damages, as well as its reasonable attorney fees and costs, and injunctive relief.

78.     As hereinabove pleaded, Defendants' conduct demonstrates an intentional and willful intent to mislead, deceive, and confuse the public, entitling Waggity to an award of punitive damages.

## COUNT IV
## DECEPTIVE ACTS AND PRACTICES UNDER SECTION 349 OF NEW YORK GENERAL BUSINESS LAW

79.     Waggity repeats and realleges Paragraphs 1 through 78.

80.     Through their distribution, advertisement, promotion, offering for sale, and sale of the Accused Products bearing marks confusingly similar to the BARKBELLY Marks, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

81.     Defendants' acts are materially misleading, as, upon information and belief, their distribution, advertisement, promotion, offering for sale, and sale of the Accused Products mislead consumers as to the quality of their products by trading off the goodwill of Plaintiff's sustainable, upcycled certified and non-allergenic ingredients, and upon information and belief, Defendants' products are not free from allergenic ingredients and do not contain sustainable, upcycled certified ingredients..

82.	By the acts described above, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of goods in violation of Section 349 of the New York General Business Law.

83.	Defendants' acts have caused, and will continue to cause, irreparable injury to Waggity. Waggity has no adequate remedy at law and is thus damaged in an amount not yet determined. Unless Defendants' conduct is enjoined, Waggity will continue to suffer irreparable harm.

## COUNT V
## LIKELIHOOD OF INJURY TO BUSINESS REPUTATION UNDER SECTION 360-l OF NEW YORK GENERAL BUSINESS LAW

84.	Waggity repeats and realleges Paragraphs 1 through 83.

85.	Waggity is the exclusive owner of the conceptually strong and inherently distinctive BARKBELLY Marks, including a federal registration for the word mark BARKBELLY.

86.	Defendants' distribution, advertisement, promotion, offering for sale, and sale of the Accused Products bearing marks confusingly similar to the BARKBELLY Marks are likely to cause consumers to purchase Defendants' products with the erroneous belief that Defendants are associated with, sponsored by, or affiliated with Waggity, or that Waggity is the source of the products offered or sold by Defendants.

87.	The different quality of Defendants' Accused Products is likely to cause consumers to believe that Waggity has changed its quality control standards, causing harm to Waggity's reputation for the production of high quality dog treats that contain no artificial flavors, colors, or preservatives and are free of corn, wheat, soy, and nuts.

88.	Defendants' aggressive campaign has flooded the market with millions of dollars in advertisements and products bearing the Accused Mark which are causing immediate and

extensive injury to Waggity. Unless and until the Court orders corrective advertising, the public will continue to be confused as the result of Defendants' infringing actions.

89.     By the acts described herein, Defendants have caused or are likely to cause a likelihood of harm to Waggity's business reputation in violation of Section 360-l of New York General Business Law.

90.     Defendants' conduct is intentional and willful.

91.     Defendants' acts have caused, and will continue to cause, irreparable injury to Waggity. Waggity has no adequate remedy at law and is thus damaged in an amount not yet determined. Unless Defendants' conduct is enjoined, Waggity will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Waggity demands:

A.     That the Court award judgment to Plaintiff, and against Defendants, on all counts of the Complaint.

B.     That Defendants, together with all of its directors, officers, agents, servants, subcontractors, employees, subsidiaries, affiliates, assigns, and all persons controlled by or in active concert or participation with, through, or under Defendants, be forthwith preliminarily and permanently enjoined and restrained from:

    1.     Using the Accused Mark, or any other copy, reproduction or variant thereof which is a colorable imitation of or otherwise likely to be mistaken for or confused with Plaintiff's BARKBELLY Marks, on or in connection with identifying, advertising, marketing, offering for sale, or selling any of Defendants' products or services;

2. Doing any other act or thing (i) likely to induce the mistaken belief that Defendants' products or services are in any way affiliated, connected or associated with Plaintiff or its services or products, or (ii) that otherwise would damage Plaintiff's goodwill and reputation;

3. Unfairly competing with Plaintiff in any manner whatsoever, including by using marks that are the same as or confusingly similar to the BARKBELLY Marks; and

4. Causing a likelihood of confusion with respect to the BARKBELLY Marks, or injury to the business reputation of Plaintiff.

C.     Awarding Plaintiff in the amount of a corrective advertising campaign that is equal in reach and prominence to its BARK IN THE BELLY advertising campaign to educate consumers that BARKBELLY products have no connection or affiliation with the BARK IN THE BELLY products, and further that BARK IN THE BELLY products contain allergens that BARKBELLY products do not have, and therefore BARKBELLY consumers must take great care to avoid confusion, while the BARK IN THE BELLY products are removed from the market;

D.     Directing Defendants to file with the Court and serve on counsel for Plaintiff within 30 days after entry of any injunction issued by the Court in this action, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, as provided by the Lanham Act 15 U.S.C. § 1116;

E.     Awarding Plaintiff damages in an amount to be proven at trial, and a disgorgement of Defendants' profits in an amount to be proven at trial, pursuant to the Lanham Act, 15 U.S.C. § 1117, and the common law;

F.     Awarding Plaintiff treble damages based on Defendants' willful infringement and intentional conduct pursuant to the Lanham Act, 15 U.S.C. § 1117 and New York's General Business Statute;

G.     Awarding Plaintiff its attorney's fees incurred in this action, in view of the willful nature of Defendants' actions, in accordance with the Lanham Act, 15 U.S.C. § 1117 and the state statutes asserted in this Complaint;

H.     Awarding Plaintiff such other actual, punitive and exemplary damages to which they are found to be entitled under federal or state law;

I.     Awarding Plaintiff pre- and post-judgment interest on its damages;

J.     Awarding Plaintiff the costs of this action taxed against Defendants; and

K.     That Plaintiff shall have such other and further relief as this Court may deem just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 18, 2025

Respectfully Submitted,

**CROWELL & MORING LLP**

By: */s/ Preetha Chakrabarti*

Preetha Chakrabarti
Two Manhattan West
375 Ninth Ave
Suite 4500
New York, NY 10001
Telephone No. (212) 223-4000
Facsimile No. (212) 223-4134
Email: PChakrabarti@crowell.com


Virginia Wolk Marino (p*ro hac vice*
forthcoming)
Andrew Avsec (p*ro hac vice* forthcoming)
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
Telephone No. (312) 321-4200
Email: VMarino@crowell.com
Email: AAvsec@crowell.com

Ryan Seewald (p*ro hac vice* forthcoming)
1601 Wewatta Street
Suite 815
Denver, CO 80202
Telephone No. (303) 524-8660
Facsimile No. (303) 524-8650
Email: RSeewald@crowell.com


*Attorneys for Waggity,* LLC