**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| WAGGITY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:25-cv-09627-ER-BCM |
| v. | ) | |
| | ) | |
| BARKBOX, INC., and BARK, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFF'S PRELIMINARY-INJUNCTION MOTION**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ..................................................................1

II.    BACKGROUND ......................................................................................2

    A.    Defendants' BARK Brand and Marks ..................................................2
    B.    Plaintiff's "Small," "Fledgling" BARKBELLY Brand ..........................3
    C.    The Crowded Field of "Bark"-Formative Marks and Terms..................4
    D.    Plaintiff's Nearly Four-Month Delay in Seeking a Preliminary Injunction ............5

III.   LEGAL STANDARD.................................................................................5

IV.   LEGAL ANALYSIS..................................................................................6

    A.    Plaintiff Fails to Prove Irreparable Harm..............................................6

        1.    Plaintiff's Unexplained Delay in Filing its Motion Demonstrates That It Will Not Suffer Irreparable Harm ....................................7
        2.    Plaintiff's Alleged Irreparable Harm is Speculative and Irrelevant............8

    B.    Plaintiff Fails to Establish a Likelihood of Success on the Merits ........10

        1.    Plaintiff Fails to Establish a Likelihood of Success on its Trademark Claims.................................................................11

            a.    Defendants Have Trademark Priority Over Plaintiff....................11
            b.    There is No Likelihood of "Forward" or "Reverse" Confusion ..................................................................13

                i.    Plaintiff's Asserted Mark is Weak.......................................14
                ii.    Defendants' Use Creates a Different Impression than Plaintiff's Use ..............................................................17
                iii.   The Parties' Products are Different.....................................18
                iv.   There is No Evidence that Plaintiff Intends to Bridge the Gap ....................................................................19
                v.    There is No Evidence of Actual Confusion .........................19
                vi.   Defendants Adopted and Use Their Marks in Good Faith ................................................................21
                vii.  There is No Evidence of Quality Issues With Defendants' Products .......................................................23
                viii. There is No Evidence About Plaintiff's Customers' Purchasing Care .............................................................23

        2.    Plaintiff Fails to Establish a Likelihood of Success on its § 349 Claim...........................................................................24
        3.    Plaintiff Fails to Establish a Likelihood of Success on its § 360-*l* Claim...........................................................................24

C.      A Preliminary Injunction Would Not Benefit the Public........................................24

D.      The Balance of Equities Favors Defendants...........................................................25

V.      CONCLUSION.....................................................................................................................25

ACTIVE 717290997v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banff, Ltd. v. Federated Dept. Stores, Inc.*,
841 F.2d 486 (2d Cir. 1988) ................................................................ 13

*Bristol-Myers Squibb Co. v. McNeil PPC, Inc.*,
973 F.2d 1033 (2d Cir. 1992) ............................................................. 23

*Brockmeyer v. Hearst Corp.*,
2002 WL 1402320 (S.D.N.Y. June 27, 2022) .................................. 18

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ................................................................. 7

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*,
440 F. Supp. 2d 249 (S.D.N.Y. 2006) .............................................. 22

*Fuel Clothing Co., Inc. v. Nike, Inc.*,
7 F. Supp. 3d 594 (D.S.C. 2014) ................................................. 14, 16

*Goat Fashion Ltd. v. 1661, Inc.*,
2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020) ................................. 21

*Grasshopper Gardens, Inc. v PMA Mechanical LLC*,
2025 WL 2711066 (N.D.N.Y. Sept. 23, 2025) ................................. 23

*Hana Fin., Inc. v. Hana Bank*,
574 U.S. 418 (2015) ...................................................................... 11, 12

*ImOn, Inc. v. ImaginOn, Inc.*,
90 F. Supp. 2d 345 (S.D.N.Y. 2000) ................................................ 12

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
645 F. Supp. 3d 185 (S.D.N.Y. 2022) .......................................... 15, 24

*Lang v. Retirement Living Pub. Co., Inc.*,
949 F.2d 576 (2d Cir. 1991) ........................................................ 20, 21

*Laurel Road Bank v. CommonBond, Inc.*,
2019 WL 1034188 (S.D.N.Y. Mar. 5, 2019) ...................................... 5

*Life Techs. Corp. v. AB Sciex Pte. Ltd.*,
2011 WL 1419612 (S.D.N.Y. April 11, 2011) .................................... 7

*Malaco Leaf, AB v. Promotion In Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003) .............................................. 19

*Marcy Playground, Inc. v. Capitol Records, Inc.*,
6 F. Supp. 2d 277 (S.D.N.Y. 1998) .................................................... 7

*Marlin Spike Hall LLC v. Bar Lab Concepts LLC*,
2023 WL 6847208 (S.D.N.Y. Oct. 17, 2023) ............................... 14, 15

iii

*Medici Classics Productions, LLC v. Medici Group, LLC*,
 683 F. Supp. 2d 304 (S.D.N.Y. 2010)..............................................................21, 23

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
 2018 WL 2089342 (S.D.N.Y. May 3, 2018) ......................................................6, 7

*New Look Party Ltd. v. Louise Paris Ltd.*,
 2012 WL 251976 (S.D.N.Y. Jan. 11, 2012) ......................................................7, 9

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.*,
 996 F.2d 577 (2d Cir. 1993) ...........................................................................22, 23

*Playtex Prods. v. Georgia-Pacific Corp.*,
 390 F.3d 158 (2d Cir. 2004) ................................................................................20

*RiseandShine Corp. v. PepsiCo, Inc.*,
 41 F.4th 112 (2d Cir. 2022) ........................................................................ *passim*

*Reply All Corp. v. Gimlet Media, LLC*,
 843 Fed. App'x. 392 (2d Cir. 2021) ...............................................................19, 20

*Thurber v. Finn Academy: An Elmira Charter School*,
 2025 WL 834485 (N.D.N.Y. Mar. 17, 2025) .......................................................12

*Transcience Corp. v. Big Time Toys, LLC*,
 50 F. Supp. 3d 441 (S.D.N.Y. 2014)......................................................................7

*Trove Brands LLC v. Jia Wei Lifestyle Inc.*,
 2025 WL 580305 (S.D.N.Y. Feb. 21, 2025)..........................................................24

*Two Hands IP LLC v. Two Hands Am.*,
 563 F. Supp. 3d 290 (S.D.N.Y. 2021)........................................................ *passim*

*UGX Brands, LLC v. City of Norfolk*,
 2025 WL 2083797 (S.D.N.Y. July 24, 2025) .......................................................10

*UMG Recordings, Inc. v. OpenDeal Inc.*,
 2022 WL 2441045 (S.D.N.Y. July 5, 2022) ............................................10, 19, 21

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
 387 F. Supp. 3d 306 (S.D.N.Y. 2019)....................................................12, 17, 21

*Woodstock Ventures LC v. Woodstock Roots LLC*,
 837 Fed. App'x. 837 (2d Cir. 2021)........................................................................6

*Zora Labs, Inc. v. Deloitte Consulting, LLC*,
 2025 WL 2104953 (S.D.N.Y. July 28, 2025) .......................................................15

**Statutes**

15 U.S.C. § 1114....................................................................................................11

15 U.S.C. § 1115(a)...............................................................................................11

15 U.S.C. § 1116(a).................................................................................................8

15 U.S.C. § 1125(a)(1)(A) ....................................................................................11

iv

New York General Business Law § 349 .........................................................................11

New York General Business Law § 360-*l* ...................................................................11

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed.)........................................13, 14

## I. PRELIMINARY STATEMENT

Plaintiff waited nearly *four months* to seek a preliminary injunction. Plaintiff's delay confirms that it would not suffer irreparable harm and warrants denying its motion.

Even if timely, Plaintiff's motion still fails on four separate grounds. *First*, Plaintiff's motion has it backwards: if any party could sue for infringement or seek an injunction, it would be *Defendants*. Defendants' "BARK IN THE BELLY" mark is legally equivalent to Defendants' family of "BARK"-formative marks, iterations of which they have been using for pet food since 2017. Plaintiff did not begin using its asserted mark until December 2023. This means that Defendants have trademark priority over Plaintiff and Plaintiff cannot sue Defendants for alleged infringement or seek to enjoin their use of BARK IN THE BELLY. *Second*, even if Plaintiff had priority, Plaintiff has not established that Defendants' use of BARK IN THE BELLY creates a likelihood of confusion with Plaintiff's asserted mark. The record confirms there is a crowded field of third parties in the United States that use "bark"-formative marks for pet-related products. Plaintiff does not provide *any* evidence that it stands out in this crowded field. Plaintiff also has no evidence of actual confusion and Defendants are not aware of any occurring. *Third*—and relatedly—in the absence of evidence of actual or likely consumer confusion, preliminarily enjoining the use of Defendants' BARK IN THE BELLY iteration of their senior BARK marks would not benefit the public. *Fourth*, it would be inequitable to require Defendants to stop using the BARK IN THE BELLY iteration of their senior BARK marks when they have priority; Plaintiff delayed in filing its motion; and Plaintiff cannot prove irreparable harm or confusion.

For these reasons, and those below, this Court should deny Plaintiff's motion.

1

## II. BACKGROUND

### A.    Defendants' BARK Brand and Marks

Matt Meeker, Carly Strife, and Henrik Werdelin founded Defendants in 2011.   Meeker Decl., ¶ 5[1].   Defendants initially offered monthly subscription boxes to customers that contained dog food and products.   *Id*. at ¶ 6.   In addition to monthly subscription boxes, Defendants currently offer individual units of dog food, dog toys, and dog accessories for sale.   *Id*. at ¶ 7.   Defendants' products are advertised and offered for sale on Defendants' website; Defendants' social-media accounts; Defendants' Amazon.com storefront; and Chewy.com and other retailers.   *Id*.

To identify and distinguish BARK-brand products in the marketplace, Bark uses, *inter alia*, a family of "bark"-formative marks, including, for example, the word marks "BARK"; "BARK BOX"; and "BARK EATS" (the "BARK Word Marks"). Meeker Decl., ¶ 8. Bark has been continuously using the BARK word mark in the United States since 2011.   *Id*.   Bark's family of BARK-formative marks includes the inset stylized BARK mark (the "Stylized BARK Mark"), as well as iterations of the Stylized BARK Mark also shown below (together with the BARK Word Marks and the Stylized BARK Mark, the "BARK Marks"):



Meeker Decl., ¶¶ 9, 10.   Defendants own United States trademark registrations for their BARK Marks.   *Id*. at ¶¶ 11, 12.   In late-August 2025, Defendants added a premium line of dog food and consumables to their BARK product offerings.   *Id*. at ¶ 13.   Defendants use the inset BARK IN THE BELLY mark to advertise and promote this product line:

---

[1] "Meeker Decl." refers to the December 15, 2025, Declaration of Matt Meeker.

ACTIVE 717290997v1



Meeker Decl., ¶ 14.  As shown above, the "BARK" prefix of the "BARK IN THE BELLY" mark *is* Defendants' Stylized BARK Mark covered by their senior trademark registrations.  *Id*. at ¶ 15. This is by design. *Id*.  Bark has been using its Stylized BARK Mark for pet food since 2017.  *Id*. at ¶ 16.  The Stylized BARK Mark is also the focal point of the BARK brand: it prominently appears on Bark's website; Amazon.com storefront; Chewy page; social-media accounts; and in the consumer-facing aspects of various products (*e.g.*, dental treats; air service; food toppers; and meat sticks).  *Id*. at ¶¶ 17-20.  It was natural, then, for Bark to use its Stylized BARK Mark as the prefix of its BARK IN THE BELLY mark.  *Id*. at ¶ 21.  Bark's use of "in the Belly" as a suffix is consistent with Bark's practice of adding a suffix to its Stylized BARK Mark (*e.g.*, **BARK SUPER CHEWER** ) *and* BARK IN THE BELLY is consistent with Bark's practice of using a "BARK in the __" branding format (*e.g.*, BARK IN THE BOX; BARK IN THE AIR; etc.).  *Id*. at ¶¶ 22, 23.

**B.     Plaintiff's "Small," "Fledgling" BARKBELLY Brand**

Plaintiff is a self-described "small" and "fledgling" business that sells plant-based jerky treats for dogs under the trademark "BARKBELLY" (the "BARKBELLY Mark").  Dkt. 10 at 1, 4, 7, 9 ("Br.").  A representative example of Plaintiff's use of its BARKBELLY Mark is below:



*See* Dkt. 11, ¶ 9. Plaintiff owns U.S. Trademark Reg. No. 7,565,678 for the BARKBELLY Mark in Classes: (i) 18 for pet-related clothing and accessories; (ii) 24 for apparel; (iii) 28 for pet toys; and (iv) 31 for edible pet treats.  Dkt. 12-1 at 5   Plaintiff's claimed date of first use of its

ACTIVE 717290997v1

BARKBELLY Mark for each Class is December 10, 2023. *Id.* The only product currently advertised on Plaintiff's website is the BARKBELLY jerky treat shown above. J. Thomas Decl., Ex. 1[2]. Plaintiff's website and "person to person sales" are the only trade channels in which Plaintiff currently sells its BARKBELLY jerky treat. Br. at 3. Plaintiff does not submit any evidence of the number of products it has sold under its BARKBELLY Mark; the amount of its sales; the amount of money Plaintiff spends advertising BARKBELLY products; a consumer survey that would indicate whether consumers associate the BARKBELLY Mark with Plaintiff; or any examples of unsolicited media coverage. *See* Br.; *see also generally* Dkts. 9, 11, and 12.

### C. The Crowded Field of "Bark"-Formative Marks and Terms

Plaintiff and Defendants are not alone in their use of the word "bark." A recent third-party search of trademark registrations and applications pending before the United States Patent and Trademark Office ("PTO") for marks starting with BARK or containing the word BARK in the pet industry yielded more than 1,500 results. J. Thomas Decl., Ex. 2-A at 6 ("Rpt"). The Rpt. also shows numerous third-party uses of "bark"-formative marks in the pet industry, including, for example:

- BARK BELLY BITES for a pet food blog (Rpt. at 1733);
- BARKY BARK for pet treats (Rpt. at 224);
- BARKWELL for pet treats (Rpt. at 240);
- BARK 'N BAKERY for pet treats (Rpt. at 400);
- BARKIES for pet treats (Rpt. at 408);
- BARKBISTRO for edible pet treats (Rpt. at 492);
- BARK POPS for pet treats (Rpt. at 552);
- BARXBUDDY for retail stores services featuring dog treats (Rpt. at 222);
- BARKMART for retail store services featuring pet food (Rpt. at 325);
- BARKFUL for dog food (Rpt. at 413);
- BARK BUTTER for animal food (Rpt. at 633);
- BARK BOWLS for pet food (Rpt. at 641);
- BARK BARS for pet food (Rpt. at 648); and
- BARK BOOST for dietary supplements for pets (Rpt. at 644).

---

[2] "J. Thomas Decl." refers to the December 15, 2025, Declaration of Jonathan W. Thomas.

ACTIVE 717290997v1

### D. Plaintiff's Nearly Four-Month Delay in Seeking a Preliminary Injunction

Plaintiff claims that Defendants' BARK IN THE BELLY products are part of a "national advertising campaign that has [allegedly] swamped the market with BARK in the BELLY promotions," including on "billboards, social media, and internet advertisements." Br. at 7. Plaintiff only identifies a single pop-up event (Dkt. 1, ¶ 41); three Internet articles; an image of one billboard; and three of Defendants' social-media influencers as evidence of Defendants' so-called "national advertising campaign" that allegedly has "swamped the market." Br. at 7-8. Plaintiff does not identify the amount of Defendants' sales or advertising expenditures during this so-called "national advertising campaign." Despite allegedly "swamping the market" with a "national advertising campaign," Defendants are not aware of BARK IN THE BELLY causing any confusion. Meeker Decl., ¶ 30.

Despite claiming that Defendants "swamped the market" with BARK IN THE BELLY in "late August 2025 or early September 2025," Plaintiff did not file this lawsuit until nearly three months later on November 18, 2025. *See* Dkt. 1. Plaintiff does not explain this three-month delay. Nor does Plaintiff explain why it waited nearly three more weeks to file its motion on December 8, 2025. *See* Dkt. 9. While the parties' lawyers had a phone call on November 24, 25, and 26, there was never a point when a settlement was close: Plaintiff made an offer on November 25 and Defendants rejected it on November 26. J. Thomas Decl., ¶ 8. Neither the parties nor their lawyers have discussed settlement since November 26. *Id.*; *see also* Meeker Decl., ¶ 24.

### III. LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Laurel Road Bank v. CommonBond, Inc.*, 2019 WL 1034188, at *3 (S.D.N.Y. Mar. 5, 2019) (emphasis in original). This is a "demanding" burden that requires Plaintiff to prove: "(1) a likelihood of success

ACTIVE 717290997v1

on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Woodstock Ventures LC v. Woodstock Roots LLC*, 837 Fed. App'x. 837, 838 (2d Cir. 2021); *accord RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022).

## IV. LEGAL ANALYSIS

Plaintiff fails to carry its burden on *all* four preliminary-injunction factors. Plaintiff's unexplained delay in filing its motion confirms the absence of irreparable harm. Plaintiff's alleged irreparable harm is also impermissibly speculative and irrelevant. On the merits, Plaintiff fails to prove a likelihood of reverse (or forward) confusion given, *inter alia*, Defendants' priority; the crowded field; and Plaintiff's failure to submit any evidence of trademark strength or actual confusion. Defendants' use of BARK IN THE BELLY also creates a different impression in the marketplace than Plaintiff's BARKBELLY Mark and the parties use different advertising and trade channels. In the absence of evidence of actual and likely consumer confusion, the public would not benefit from this Court preliminarily enjoining the use of the BARK IN THE BELLY iteration of Defendants' senior BARK Marks. It also would be inequitable to enjoin that use given Defendants' priority; Plaintiff's delay; and Plaintiff's lack of evidence.

### A. Plaintiff Fails to Prove Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Monowise Ltd. Corp. v. Ozy Media, Inc.,* 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018). In fact, if the movant "fails to show irreparable harm, a court need not even address the remaining elements of the test." *Id.* That is the case here. Plaintiff seeks to establish irreparable harm by relying on: (i) a presumption of irreparable harm under the

6

Trademark Modernization Act ("TMA"); (ii) speculation about alleged quality issues with Defendants' products and Plaintiff's business plans; and (iii) alleged instances of actual confusion. *See* Br. at 20-21. Each attempt fails.

### 1. Plaintiff's Unexplained Delay in Filing its Motion Demonstrates That It Will Not Suffer Irreparable Harm

"It is well-established in this Circuit that delays in moving for injunctive relief to protect copyrights and trademarks from further unauthorized use weigh heavily against the movant." *Transcience Corp. v. Big Time Toys, LLC,* 50 F. Supp. 3d 441, 457 (S.D.N.Y. 2014) (citing *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985)). For example, in *Citibank*, the Second Circuit reversed a preliminary injunction in a trademark case based on the plaintiff's 10-week delay. *See Citibank, N.A.*, 756 F.2d at 276. As the Second Circuit explained:

> "Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Id.*

Post-*Citibank*, courts "typically decline to grant preliminary injunctions [in trademark cases] in the face of unexplained delays of more than two months." *Monowise Ltd. Corp.,* 2018 WL 2089342, at *2; *see also Transcience Corp.*, 50 F. Supp. 3d at 458 (four-month delay); *Two Hands IP LLC v. Two Hands Am.*, 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021) (three-month delay); *New Look Party Ltd. v. Louise Paris Ltd.,* 2012 WL 251976, at *11 (S.D.N.Y. Jan. 11, 2012) (delays of two and three months); *Life Techs. Corp. v. AB Sciex Pte. Ltd.,* 2011 WL 1419612, at *7 (S.D.N.Y. April 11, 2011) (three-month delay); and *Marcy Playground, Inc. v. Capitol Records, Inc.,* 6 F. Supp. 2d 277, 281-82 (S.D.N.Y. 1998) (three-month delay).

"[T]he length of delay is measured from the time the plaintiff originally learned of the alleged violation or is put on notice thereof, not when the irreparable injury allegedly begins." *Two Hands IP LLC*, 563 F. Supp. 3d at 301. Here, Plaintiff claims that Defendants began

swamping the market with BARK IN THE BELLY "in late August or early September 2025 […]." Br. at 7. Yet Plaintiff waited nearly *three months* to file this lawsuit, and nearly *three more weeks* after that to file its motion. Plaintiff does not address either period of delay, much less attempt to explain them. To the extent Plaintiff argues in reply that the parties were discussing this case between November 18 and December 8, that argument would fail, as there was no realistic possibility of settlement. J. Thomas Decl., ¶ 8; *see also Two Hands IP LLC*, 563 F. Supp. 3d at 300-01 (alleged settlement efforts did not excuse delay where "plaintiff had no reason to believe the defendants would settle, having been rebuffed at every opportunity").

Plaintiff's delay in filing its motion not only prevents Plaintiff from relying on a presumption of irreparable harm under the TMA[3] but also it demonstrates that Plaintiff would not suffer irreparable harm in the absence of a preliminary injunction. *See Two Hands IP LLC*, 563 F. Supp. 3d at 300 (plaintiff's unexplained three-month delay "alone precludes the application of the Trademark Modernization Act's presumption"). Accordingly, Plaintiff's motion fails.

## 2.    Plaintiff's Alleged Irreparable Harm is Speculative and Irrelevant

Even if timely, Plaintiff's motion still fails because Plaintiff's *theories* of irreparable harm rely on speculation and conjecture instead of *evidence* that its alleged irreparable harm is "actual and imminent […]." *Two Hands IP LLC*, 563 F. Supp. 3d at 300. Evidence of irreparable harm in a trademark case consists of evidence that the defendant's use of its allegedly infringing mark will cause the plaintiff to "lose control over the reputation of its trademark pending trial […]." *Id*.

Plaintiff claims to be "at risk of completely losing control of its brand" because "consumers with allergen concerns who purchase BARK IN THE BELLY may have a bad experience"; impute

---

[3] Plaintiff also cannot rely on a presumption of irreparable harm under the TMA because Plaintiff has not established a likelihood of success on the merits of its claims. *See* § IV.B *infra*; *see also* 15 U.S.C. § 1116(a) (rebuttable presumption of irreparable harm applies only when movant has established a likelihood of success on the merits of its claims).

ACTIVE 717290997v1

that bad experience to Plaintiff's brand; and, in turn, "taint the [Plaintiff's] BARKBELLY brand." Br. at 20-21. In the first instance, Plaintiff fails to prove that its BARKBELLY brand has any reputation or goodwill that could be irreparably harmed. Plaintiff describes itself as a "small" and "fledgling" business; failed to submit a secondary meaning survey; failed to present any evidence of sales or advertising figures; failed to present any evidence of unsolicited media coverage; and is one of many entities in the United States that use "bark"-formative marks. Dkt. 11, ¶¶ 19, 20. *See New Look Party Ltd.*, 2012 WL 251976, at *10 (no irreparable harm; as here, "plaintiff has yet to accrue significant goodwill in the United States" and "presented no evidence of brand loyalty or even recognition").

Even if Plaintiff's BARKBELLY brand had any reputation or goodwill, its arguments concerning irreparable harm are impermissibly speculative. Plaintiff does not provide any evidence that Defendants' products have quality issues, much less provide evidence of consumers allegedly having a bad experience with Defendants' products and imputing that experience to Plaintiff's BARKBELLY brand. Instead, Plaintiff's sole support for this alleged irreparable harm is the self-serving declaration of its Co-Founder, who expresses mere "concern" about what "may" happen if consumers have a bad experience with Defendants' products. Dkt. 11, ¶ 20. Plaintiff also claims it is suffering irreparable harm because it "hop[es] to expand its business" but Defendants' BARK IN THE BELLY allegedly makes it "unlikely" that third-party e-commerce platforms will carry Plaintiff's products in the future if they already carry Defendants' products. Br. at 20. This, too, is pure speculation. Other than referencing "pitches" to unidentified retailers (Br. at 5), Plaintiff does not provide any evidence (i) of its alleged business plans; (ii) that it has a realistic opportunity to offer its products on third-party e-commerce platforms; *or* (iii) that a third party told Plaintiff it would not carry both parties' products. Instead, Plaintiff—again—cites only

9

to the declaration of its Co-Founder, who express mere "hope" that Plaintiff can expand its business to e-commerce platforms at an unidentified point in the future. Dkt. 11, ¶ 20.

Plaintiff's speculation about what may happen in the future is a far cry from carrying its burden of producing *evidence* that irreparable harm is actual and imminent. *See Two Hands IP LLC*, 563 F. Supp. 3d at 301 (as here, there was "no evidence that the defendants' services or goods are of inferior quality" and the plaintiff's "fears" about future harm were "merely speculative"); *UGX Brands, LLC v. City of Norfolk*, 2025 WL 2083797, at *3 (S.D.N.Y. July 24, 2025) (as here, "Plaintiffs do not provide any examples, evidence, or additional arguments to support these conclusory allegations of harm, rendering such allegations remote [and] speculative," rather than "actual and imminent"); and *UMG Recordings, Inc. v. OpenDeal Inc.*, 2022 WL 2441045, at *10 (S.D.N.Y. July 5, 2022) (as here, the plaintiff "adduced no evidence demonstrating that [defendant's] products or services are of such inferior quality that they pose a risk to [plaintiff's] reputation" and the plaintiff's concerns of such harm were "speculative").

Plaintiff further claims that instances of alleged actual confusion demonstrate it would suffer irreparable harm in the absence of a preliminary injunction. Br. at 20. Plaintiff has no evidence of actual confusion. *See* § IV.B *infra*. "[E]vidence of customer confusion [also] is not equivalent to evidence of irreparable harm." *UMG Recordings, Inc.*, 2022 WL 2441045, at *10.

Based on the foregoing, Plaintiff fails to prove irreparable harm—"the 'single most important prerequisite for issuance of a preliminary injunction." *UMG Recordings, Inc.*, 2022 WL 2441045, at *10. Accordingly, Plaintiff's motion "must fail" and this Court need not address the remaining factors. *Id*. But those factors also confirm that Plaintiff's motion fails. *See infra*.

### B.  Plaintiff Fails to Establish a Likelihood of Success on the Merits

In Counts I-III of the Complaint, Plaintiff asserts claims for alleged federal trademark infringement and unfair competition under Sections 32 and 43(a)(1)(A) of the Lanham Act,

respectively, 15 U.S.C. §§ 1114, 1125(a)(1)(A), as well as New York common law.  *See* Dkt. 1 at

pgs. 18-22 ("Trademark Claims").  In Count IV, Plaintiff asserts a claim for alleged deceptive acts

and practices under NEW YORK GENERAL BUSINESS LAW § 349 ("GBL").  *Id*. at 22-23 ("§ 349

Claim").  In Count V, Plaintiff asserts a claim for injury to business reputation under GBL § 360-

*l*.  *Id*. at 23-4. ("§ 360-*l* Claim").  Plaintiff fails to carry its burden of establishing a likelihood of

success on the merits of its claims.

### 1.     Plaintiff Fails to Establish a Likelihood of Success on its Trademark Claims

To prevail on the Trademark Claims, Plaintiff must prove: (i) its asserted BARKBELLY

Mark is valid and (ii) a likelihood of consumer confusion.  *See* Br. at 9, 10.  Given Plaintiff's

federal trademark registration for its asserted BARKBELLY Mark, Defendants do not dispute the

first element.  *See* 15 U.S.C. § 1115(a) (federal trademark registration is *prima facie* evidence of

validity).  However, Plaintiff still fails to carry its burden of establishing a likelihood of success

on its Trademark Claims for two reasons: (i) Defendants have trademark priority and (ii) even if

Plaintiff had priority, it fails to proffer evidence of a likelihood of consumer confusion.

### a.     Defendants Have Trademark Priority Over Plaintiff

Defendants' trademark priority over Plaintiff means that Plaintiff cannot sue Defendants

for alleged infringement or seek to enjoin the use of Defendants' BARK IN THE BELLY mark.

In the United States, "[r]ights in a trademark are determined by the date of the mark's first

use in commerce. The party who first uses a mark in commerce is said to have priority over other

users."  *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015).

Here, Plaintiff claims that the parties' marks are "nearly identical" because the "dominant"

portions of Plaintiff's mark and BARK IN THE BELLY are "bark" and "belly."  Br. at 11.

Defendants have been using their BARK word mark since 2011.  Moreover, the "BARK" portion

of the BARK IN THE BELLY mark *is* Defendants' federally registered, Stylized BARK Mark,

11

which Defendants have been using for pet food since June 2017. Defendants have used their Stylized BARK Mark + a suffix for pet food since 2021. As shown in § II.A and below, BARK IN THE BELLY creates "the same, continuing commercial impression" as Defendants': (i) Stylized BARK Mark and (ii) use of the Stylized BARK Mark + a suffix. *Hana Fin., Inc.*, 574 U.S. at 421.



Accordingly, Defendants can "tack" their 2017 priority date (2021 at the latest) in their Stylized BARK Mark onto their BARK IN THE BELLY mark. *Hana Fin., Inc.*, 574 U.S. at 421 ("A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. This is called 'tacking'"). Defendants' 2017 (2021) priority date is earlier than Plaintiff's claimed December 2023 first-use date. As such, Plaintiff has it backwards: Plaintiff cannot sue Defendants or seek to enjoin the BARK IN THE BELLY iteration of Defendants' senior BARK Marks. *See Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F. Supp. 3d 306, 315 (S.D.N.Y. 2019) (the party with priority "obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially"); *Thurber v. Finn Academy: An Elmira Charter School*, 2025 WL 834485, at *14 (N.D.N.Y. Mar. 17, 2025) (dismissing plaintiff's trademark-infringement claim because "Defendants have priority […]"); and *ImOn, Inc. v. ImaginOn, Inc.*, 90 F. Supp. 2d 345, 349-50 (S.D.N.Y. 2000) (denying preliminary injunction in trademark case; the court noting "there is a real question as to whether plaintiff or defendant has priority to this mark").

Nonetheless, even if Plaintiff had priority, it fails to proffer evidence of a likelihood of "forward" or "reverse" consumer confusion.

### b. There is No Likelihood of "Forward" or "Reverse" Confusion

In the Second Circuit, courts use the eight "*Polaroid* factors" to assess likely confusion. Those factors are: "the strength of [the plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the [plaintiff] will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *RiseandShine Corp.*, 41 F.4th at 119.

In theory, there can be a likelihood of "forward" or "reverse" confusion. Forward confusion occurs when the junior user's customers mistakenly believe "that the senior user is the source of the junior user's goods." *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988). Reverse confusion is the opposite: it occurs when the senior user's customers mistakenly believe "that the junior user is the source of the senior user's goods." *Id.*; *see also* MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 32:159 (5th ed.) (forward confusion concerns the junior user's customers; reverse confusion concerns the senior user's customers).

Plaintiff's Complaint alleges forward and reverse confusion. *See* Dkt. 1, ¶¶ 50, 51. Plaintiff's motion addresses reverse confusion. Br. at 2. Plaintiff bases its reverse-confusion theory on the premise that it is the senior user (*id*. at 10); however, as discussed *supra*, *Defendants* are the senior users. Thus, the appropriate analysis of alleged forward confusion in this case would be whether Plaintiff's use of its BARKBELLY Mark is likely to cause its customers to believe that Defendants are the source of Plaintiff's BARKBELLY products. But even if this Court indulges Plaintiff's theory of reverse confusion and finds that Plaintiff is the senior user, the record does not contain any evidence for this Court to find that Defendants'—*i.e.*, the alleged junior users under Plaintiff's theory—use of BARK IN THE BELLY is likely to cause Plaintiff's customers to believe that Defendants are the source of Plaintiff's BARKBELLY products.

13

### i.     Plaintiff's Asserted Mark is Weak

"[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *RiseandShine Corp.*, 41 F.4th at 120. "The strength of a trademark is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength." *Id*.

Plaintiff claims that, in a reverse-confusion case, the commercial strength of the allegedly larger, junior user's mark is the relevant mark. Br. at 15. Plaintiff is not correct. The cases that Plaintiff cites to support this erroneous proposition pre-date the Second Circuit's 2022 decision in *RiseandShine Corp.*, wherein the court evaluated the commercial strength of the plaintiff/allegedly smaller, senior user's mark in the reverse-confusion context. *See* Br. at 14-6; *but see RiseandShine Corp.*, 41 F.4th at 121-24; *Marlin Spike Hall LLC v. Bar Lab Concepts LLC*, 2023 WL 6847208, at *5 (S.D.N.Y. Oct. 17, 2023) ("In a likelihood of reverse confusion case, as in a likelihood of forward confusion case, the Second Circuit considers the strength of the senior user's mark") (citing MCCARTHY at § 23:10 ("Apparently the Second Circuit also takes the position that in reverse confusion cases, the question of strength is the same as in forward confusion: the senior user must prove that its mark is strong") (citing *RiseandShine Corp.*, 41 F.4th at 116)). And it makes sense that the commercial strength inquiry in the reverse-confusion context is on the allegedly smaller, senior user's mark. "Generally, the effect of reverse confusion is that the senior user loses the value of [its] trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets" when the larger, junior user enters the market. *Fuel Clothing Co., Inc. v. Nike, Inc.*, 7 F. Supp. 3d 594, 624 (D.S.C. 2014). *But* if the senior user has no marketplace recognition when the allegedly larger, junior user enters the market, then the junior user does not "swamp" the senior user's non-existent reputation. *Id*.

Given that Plaintiff claims to be the senior user, it must prove that its asserted BARKBELLY Mark is commercially strong. When assessing a mark's commercial strength, courts consider evidence in the following categories: "(1) advertising and promotional expenses; (2) consumer studies linking the mark to the source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *Two Hands IP LLC*, 563 F. Supp. 3d at 303.

Plaintiff does not quantify its alleged advertising and promotional efforts; it does not provide a consumer study; it does not identify any unsolicited media coverage; it does not provide any sales figures; it does not identify any attempts by third parties to plagiarize its asserted BARKBELLY mark; and it has only been using its mark for two years. *See Two Hands IP LLC*, 563 F. Supp. 3d at 303 (no likelihood of confusion where, as here, plaintiff did not quantify its advertising efforts; submit a survey; and only had seven years of use); *Marlinspike Hall LLC*, 2023 WL 6847208, at *6 (no likelihood of confusion where, as here, plaintiff did not quantity its advertising efforts; did not submit a survey; and had only been using its mark for two years); *Zora Labs, Inc. v. Deloitte Consulting, LLC*, 2025 WL 2104953, at *2 (S.D.N.Y. July 28, 2025) (no likelihood of confusion where, as here, plaintiff did not provide evidence of strength and only had 1-5 years of use).

Plaintiff also ignores that, as discussed in § II.C *supra*, there is a crowded field of third parties in the United States that also use "bark"-formative marks for pet-related goods and services, which "further underlines the weakness of [Plaintiff's asserted BARKBELLY] mark." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 243-44 (S.D.N.Y. 2022). Indeed, "'[e]xtensive third-party usage of a mark in related products generally weighs against a finding that a trademark is strong. '[I]n a 'crowded' field of similar marks, each member

15

of the crowd, is relatively 'weak' in its ability to prevent use by others in a crowd.'" *Id.* (quoting

*RiseandShine Corp.*, 41 F.4th at 122); *see also id.* at n. 18 (the relevance of the crowded field

extends beyond the plaintiff's exact products, as the "Second Circuit has never held that evidence

of third-party registrations should be limited to the narrow market in question").  Plaintiff fails to

proffer *any* evidence that its asserted BARKBELLY Mark stands out in this crowded field.  *See*

*also Fuel Clothing Co., Inc.*, 7 F. Supp. 3d at 624 (Nike did not "overwhelm" the plaintiff's alleged

reputation, "as the market was saturated [with third-party usage] upon Nike's entry").

The foregoing notwithstanding, even if Plaintiff is correct (it is not) that the relevant mark

on its theory of reverse confusion is the BARK IN THE BELLY iteration of Defendants' BARK

Marks[4], Plaintiff suffers the same fate: it has no evidence. Plaintiff failed to submit sales and

advertising figures or a survey concerning the BARK IN THE BELLY iteration of Defendants'

BARK Marks.  Instead, Plaintiff only identifies one pop-event; three Internet articles; an image of

one billboard; and three of Defendants' social-media influencers as evidence of Defendants' so-

called "national advertising campaign" that allegedly has "swamped the market." Br. at 7-8.  Put

simply, the record does not support an inference, much less a finding, that the BARK IN THE

BELLY iteration of Defendants' BARK Marks has achieved the degree of commercial strength

that is necessary to "swamp" the market for purposes of reverse confusion.

In short, Plaintiff fails to proffer any evidence of commercial strength.  Accordingly, the

first *Polaroid* factor weighs against likely confusion—reverse and forward[5].

---

[4] For purposes of Plaintiff's theory of reverse confusion, it must be true that BARK IN THE
BELLY is a separate mark with a separate commercial impression and separate first-use date from
Defendants' BARK Marks; otherwise, as discussed *supra*, Defendants could tack their priority in
their BARK Marks onto their BARK IN THE BELLY iteration and have priority over Plaintiff.
[5] For purposes of forward confusion, Defendants' BARK Marks would be the relevant marks based
on Defendants' priority over Plaintiff.  Plaintiff's Br. does not address Defendants' Marks.

ACTIVE 717290997v1

The weakness of Plaintiff's asserted mark is significant. "Weak marks are entitled to only an 'extremely narrow scope" of protection." *RiseandShine Corp.*, 41 F.4th at 124. Thus, "unless a convincing combination of other *Polaroid* factors militates strongly in favor of likelihood of confusion," confusion is not likely to occur. *Id.* "No such [combination of other factors] exist here." *Id.*

 ii.  **Defendants' Use Creates a Different Impression than Plaintiff's Use**

"When evaluating the similarity of marks, 'courts look to the overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Woodstock Ventures LC*, 387 F. Supp. 3d at 316. Under this factor, "it is appropriate to consider the products' sizes, logos, typefaces, and package designs, in addition to any other contextual clues that might serve to distinguish the marks." *Id.*

Here, Defendants' BARK Marks and the BARK IN THE BELLY iteration of those Marks appear on different types and sizes of packaging than Plaintiff uses; in different font sizes, types, and colors than Plaintiff uses; and in conjunction with different graphics and phrases than Plaintiff uses. For example, the top 2/3 of Defendants' packaging says "WOOF," which looks and sounds nothing like Plaintiff's asserted BARKBELLY Mark.



These myriad differences in how Defendants use BARK IN THE BELLY dispel a likelihood of forward and reverse confusion. *See Woodstock Ventures LC*, 387 F. Supp. 3d at 316-17 ("The different fonts of the parties' marks; Plaintiffs' use of the prominent dove and guitar logo in conjunction with their WOODSTOCK mark; and Defendants' use of the term 'American

Products' in connection with their WOODSTOCK mark all undercut Defendants' arguments concerning the likelihood of confusion in the marketplace"); *RiseandShine Corp.*, 41 F.4th at 124-25 (no likelihood of reverse confusion where, as here, parties' marks appeared on packaging that contained numerous differences in terms of size, color, and artwork).

### iii. The Parties' Products are Different

The third *Polaroid* "factor considers to what extent the two products compete with each other, taking into account both the market proximity and geographic proximity." *Two Hands IP LLC*, 563 F. Supp. 3d at 305.

Plaintiff claims the parties offer "identical or closely related" products because both parties sell products that dogs can eat. Br. at 12-13. Plaintiff offers no evidence to support the proposition that a consumer in the market for Plaintiff's plant-based jerky treat would also be in the market for Defendants' high-animal-protein product or otherwise expect the same company to be the source of those two drastically different products—plant-based versus animal-protein-based—offered in strikingly different-looking packaging. *See Two Hands IP LLC*, 563 F. Supp. 3d at 306 (confusion not likely where parties' restaurants were different); *Brockmeyer v. Hearst Corp.*, 2002 WL 1402320, at *10 (S.D.N.Y. June 27, 2022) (confusion not likely where parties' magazines were different); *see also* Meeker Decl., ¶ 29 (discussing differences in parties' products).

Plaintiff also ignores that consumers encounter the parties' products in different advertising and trade channels. *See Brockmeyer*, 2002 WL 1402320, at *10 (third *Polaroid* factor requires courts to "compare all aspects of the products, including price, style, intended uses, target clientele, typical distribution channels, and others"). Plaintiff advertises and sells its products on its website; "through person to person sales"; and its own social-media accounts. Defendants advertise and sell their BARK and BARK IN THE BELLY products on their own social-media accounts and website, and with third-party retailers, such as Amazon.com and Chewy. There is no evidence

that the parties have—or do—advertised or sold their disparate products on the same social-media accounts, on the same websites, or with the same third-party retailers.  *See Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 373-74 (S.D.N.Y. 2003) (no likelihood of confusion; both parties sold gummy candy but they did so "through different retailers").

### iv.    There is No Evidence that Plaintiff Intends to Bridge the Gap

This factor requires the Court to determine "the likelihood that the plaintiff will enter the defendants' business or of the average customer's perception that the plaintiff would enter the defendants' market." *Two Hands IP LLC*, 563 F. Supp. 3d at 306.    There is no evidence that Plaintiff intends to engage in a radical style drift from advertising and selling plant-based products to what it pejoratively refers to as Defendants' allegedly allergen-laden, animal-protein products. Nor has Plaintiff proffered any evidence that its customers would expect it to do so.  *See Two Hands IP LLC*, 563 F. Supp. 3d at 306 ("In this case, the plaintiff has not expressed any desire to enter the fast-food market, let alone the corn dog-specific fast-food market. The plaintiff has also not provided any evidence suggesting that an average consumer would think it would likely do so. Accordingly, this factor weighs in favor of the defendants").

### v.    There is No Evidence of Actual Confusion

Plaintiff "has failed to introduce survey evidence, empirical studies, or expert testimony to suggest that the public is or is likely to be confused, the absence of which is 'significant.'" *UMG Recordings, Inc.*, 2022 WL 2441045, at *8.  Indeed, "the Court may properly infer no likelihood of consumer confusion from this absence of survey evidence." *Id.*; *see also Reply All Corp. v. Gimlet Media, LLC*, 843 Fed. App'x. 392, 397 (2d Cir. 2021) ("[T]he absence of surveys is evidence that actual confusion cannot be shown").

ACTIVE 717290997v1

Instead of a survey, Plaintiff attempts to establish actual confusion by relying on three alleged instances on social media by Defendants' alleged influencers; one Internet search result; and comments on Defendants' website. Br. at 8; 17-8. Plaintiff's attempt fails.

Plaintiff's alleged evidence of actual confusion does not concern mistaken purchasing decisions. Indeed, Plaintiff presents no evidence that it spoke with Defendants' alleged influencers about the posts, much less that Defendants' use of BARK IN THE BELLY caused anyone to mistakenly purchase Defendants' product instead of Plaintiff's product (or vice versa). *See Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991) (Actual confusion concerns mistaken purchasing decisions—"not against confusion generally"); *Reply All Corp.*, 843 Fed. App'x at 397 (alleged instances of confusion on social media "not cognizable instances of actual consumer confusion under the fifth *Polaroid* factor"); *Two Hands IP LLC*, 573 F. Supp. 3d at 307 (rejecting social media posts as evidence of alleged actual confusion; "[e]ven assuming the mistaken posts demonstrate confusion in the general sense, [n]o evidence links the confusion evinced by the [posts] to any potential or actual effect on customers' purchasing decisions. This is therefore not the type of confusion that can satisfy this Polaroid factor"); *Playtex Prods. v. Georgia-Pacific Corp.,* 390 F.3d 158, 166 (2d Cir. 2004) (a search engine's failure to distinguish between marks does not amount to consumer confusion).

Plaintiff's alleged evidence of actual confusion speaks to the wrong customer base. According to Plaintiff, the instances on social media were done by *Defendants*' influencers and the comments were made on *Defendants'* website. However, as discussed *supra*, whether viewed through the prism of likely forward or reverse confusion, the relevant customer base is *Plaintiff's* customers. Plaintiff does not claim that a single one of its customers has made a mistaken

purchasing decision.  *See Lang*, 949 F.2d at 583 (rejecting Plaintiff's evidence of alleged actual confusion because it did not concern Plaintiff's customers).

Plaintiff's alleged evidence of actual confusion is *de minimis*.  Three alleged incidents on social media; one Internet search; and comments on a website are "insufficient at the preliminary injunction stage to support a likelihood of consumer confusion, particularly when [Plaintiff] puts forth no evidence that its customers' purchasing decisions have been influenced by this [alleged] confusion."  *UMG Recordings, Inc.*, 2022 WL 2441045, at *8 (rejecting five alleged instances of actual confusion); *compare with Goat Fashion Ltd. v. 1661, Inc.*, 2020 WL 5758917, at *13 (S.D.N.Y. Sept. 28, 2020) (Plaintiff's case; unlike here, record contained evidence of thousands of mistaken searches).

### vi.    Defendants Adopted and Use Their Marks in Good Faith

Plaintiff claims that Defendants acted in bad faith because they allegedly had prior knowledge of Plaintiff's BARKBELLY Mark and the PTO rejected Defendants' applications to register BARK IN THE BELLY.  Br. at 18-9.  Plaintiff is not correct.  Under this factor, bad faith "refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Two Hands IP LLC*, 563 F. Supp. 3d at 307.

As discussed *supra*, Plaintiff submits no evidence that it has *any* reputation Defendants could exploit.  *See Woodstock Ventures LC*, 387 F. Supp. 3d at 319 (no bad faith where, as here, there was no evidence movant had any goodwill for alleged infringer to trade off of); *Medici Classics Productions, LLC v. Medici Group, LLC*, 683 F. Supp. 2d 304, 313 (S.D.N.Y. 2010) ("[G]iven Medici Classics' low sales volume and the lack of evidence of secondary meaning, it is patently unreasonable to conclude that defendants sought to usurp that reputation or to otherwise capitalize on it").

21

Defendants' prior knowledge of Plaintiff also does not equate to bad faith. *See Two Hands IP LLC*, 563 F. Supp. 3d at 307. For example, in *Two Hands*, "the plaintiff argue[d] that the defendants must have acted in bad faith because the defendants were apparently aware of the plaintiff's mark from their initial failed attempt to register their design mark with the USPTO in Class 43." *Id*. The court disagreed, stating "[t]he defendants are correct, however, that awareness of the plaintiff' mark does not mean that they acted in bad faith." As the Court went on to note, "the defendants may have reasonably concluded that there would be no confusion between their mark as it would be used and the plaintiff's use of its mark." *Id*. That is the case here.

As used in the marketplace, Defendants' use of BARK IN THE BELLY creates a strikingly different overall commercial impression than Plaintiff's BARKBELLY Mark. Defendants also use different advertising and trade channels than Plaintiff. What is more, the record confirms that Defendants use BARK IN THE BELLY in a manner that is consistent with *Defendants*' practice of: (i) using its senior, federally registered Stylized BARK mark as a prefix; (ii) adding a suffix to its Stylized BARK Mark; *and* (iii) using a "BARK in the ___" branding format. In other words, Defendants are trading off *Defendants'* pre-existing reputation and goodwill. *See* Meeker Decl., ¶¶ 24-8. This is good faith, not bad faith, and this factor also favors Defendants. *See Two Hands IP LLC*, 563 F. Supp. 3d at 307; *Zora Labs, Inc.*, 2025 WL 2104953, at *4 (finding good faith; differences in the parties' products and operations made it "seem[] implausible" that defendant "would seek to conflate its products with" the plaintiff) *compare with De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.,* 440 F. Supp. 2d 249, 278 (S.D.N.Y. 2006) (Plaintiff's case; unlike here, evidence showed "defendants intended to capitalize on the name recognition and goodwill created by DBG […] [and] deceive the public and sow confusion"); and *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 586–87 (2d Cir. 1993) (Plaintiff's case; unlike

here, defendant was former distributor of plaintiff's product and evidence led to inference that it intentionally copied the plaintiff's trade dress).

###### vii.    There is No Evidence of Quality Issues With Defendants' Products

"The analysis of the quality of the defendants' product is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Two Hands IP LLC*, 563 F. Supp. 3d at 307. Plaintiff claims that Defendants' products contain allergens, but that is a difference in product characteristics, not quality. Plaintiff's argument also is belied by the record, which confirms that Defendants' products receive near-five-star ratings. Meeker Decl., ¶ 31.

###### viii.    There is No Evidence About Plaintiff's Customers' Purchasing Care

"Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product." *Grasshopper Gardens, Inc. v PMA Mechanical LLC*, 2025 WL 2711066, at *26 (N.D.N.Y. Sept. 23, 2025) (citing *Bristol-Myers Squibb Co. v. McNeil PPC, Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992)). "This factor does not necessarily turn on the consumers' intellectual aptitude; rather, the inquiry asks how discerning a consumer will be in a given purchasing decision." *Id.*

Sophistication may be proved "by direct evidence such as expert opinions or surveys, and in some cases by indirect evidence such as inferring characteristics of consumers based on the nature of the product or its price." *Medici*, 580 F. Supp. 2d 548, 557 (S.D.N.Y. 2008). Plaintiff submits no direct evidence of consumer sophistication. As for indirect evidence, Plaintiff submits only that its dog treats are "inexpensive" at $14.99 for a 5 oz bag. Plaintiff argues, without support, that its customers are, therefore, "casual" and thus, unsophisticated. Yet Plaintiff already admits

that its consumers are discerning – they seek out Plaintiff's allergen-friendly, plant-based dog treats. It belies logic that Plaintiff's consumers are both discerning enough to seek out Plaintiff's purportedly allergen-friendly, plant-based dog treats in a saturated market of pet products, yet not discerning enough to distinguish between Plaintiff's BARKBELLY plant-based jerky treats for dogs and Defendant's BARK IN THE BELLY dog food.

### 2. Plaintiff Fails to Establish a Likelihood of Success on its § 349 Claim

Plaintiff's § 349 Claim relies on the same theory as its Trademark Claims: Defendants' use of the BARK IN THE BELLY Mark allegedly creates consumer confusion. *See* Dkt. 1 at pgs. 22-23. "But that claimed injury is no different from the type of 'injury alleged in any 'garden variety' trademark or trade dress claim, It thus fails to state a claim under § 349." *Trove Brands LLC v. Jia Wei Lifestyle Inc.*, 2025 WL 580305, at *9 (S.D.N.Y. Feb. 21, 2025).

### 3. Plaintiff Fails to Establish a Likelihood of Success on its § 360-*l* Claim

To prevail on the 360-*l* Claim, Plaintiff "must show "(1) ownership of a distinctive mark, and (2) a likelihood of dilution." *Jackpocket, Inc.*, 645 F. Supp. 3d at 279. "The Second Circuit has equated [d]istinctiveness for dilution purposes ... with [both] the [inherent and commercial] strength of a mark for infringement purposes." *Id*. As discussed *supra*, Plaintiff's BARKBELLY Mark is weak. Thus, Plaintiff's 360-*l* Claim fails. *See id*. at 280 ("The Court has already found that Jackpocket's marks are not distinctive, either inherently or commercially").

### C. A Preliminary Injunction Would Not Benefit the Public

Plaintiff's inability to prove actual or likely confusion confirms that enjoining BARK IN THE BELLY would not benefit the public. *See Two Hands IP LLC*, 563 F. Supp. 3d at 309 (injunction would not benefit public where plaintiff lacked evidence of consumer confusion).

ACTIVE 717290997v1

## D. The Balance of Equities Favors Defendants

It would be inequitable to require Defendants to stop using the BARK IN THE BELLY iteration of their senior BARK Marks given their priority. But even if Defendants did not have priority, it still would be inequitable to enjoin BARK IN THE BELLY given Plaintiff: (i) delayed filing its motion; (ii) has no evidence of irreparable harm; and (iii) has no evidence of actual or likely confusion. *Accord Two Hands IP LLC*, 563 F Supp. 3d at 308-09.

## V. CONCLUSION

Based on the foregoing, this Court should deny Plaintiff's motion[6].

Dated: December 15, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas (JT1016)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9219
Email: jonathan.thomas@gtlaw.com

Molly R. Littman-Johnson (to apply *pro hac vice*)
90 South 7th St., Suite 3500
Minneapolis, Minnesota 55402
Tel: (612) 259-9669
Fax: (612) 259-9700
Email: Molly.Littman@gtlaw.com

*Attorneys for Defendants*

---

[6] "Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity." *See Waldman Publ. Corp. v. Landoll, Inc.*, 53 F.3d 775 (2d Cir. 1994) (vacating preliminary injunction, in part, as too broad). Plaintiff's requested injunction is so broad as to encompass Defendants' lawful activity – Defendants' use of their senior BARK Marks. If the Court is inclined to grant Plaintiff's motion, which it should not, Plaintiff's requested injunction must be narrowed significantly.

ACTIVE 717290997v1

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 15, 2025, I served a true and correct copy of the foregoing document on Plaintiff's counsel of record in this lawsuit via the Court's ECF system.

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas

*Attorney for Defendants*

ACTIVE 717290997v1