UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WAGGITY, LLC | ) | |
| Plaintiff, | ) | Civil Action No. 25-cv-9627-ER |
| | ) | Hon. Judge Edgardo Ramos |
| v. | ) | |
| BARKBOX, INC. and BARK, INC. | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF WAGGITY, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................... 1

II. Plaintiff Timely Filed Motion For Preliminary Injunction ..................................................... 1

III. Plaintiff Has Demonstrated A Likelihood Of Success On The Merits .................................. 3

    A. Plaintiff Owns Prior Rights in BARKBELLY Mark ........................................................ 3

    B. Defendants' Reckless Disregard for Plaintiff's Rights and Bad Faith Intent ..................... 5

    C. Plaintiff's Mark is Inherently Strong ................................................................................ 6

    D. Remaining Likelihood of Confusion Factors Strongly Favor Plaintiff ............................. 8

IV. Plaintiff Has Shown Likelihood of Irreparable Injury, Balance of Hardships, and Public Interest Tips Demonstrably in Plaintiff's Favor ........................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Mobilphone, Inc. v. Am. Paging, Inc.*,
  No. 90–1205, 1990 WL 177458 (Fed. Cir. 1990)...................................................................5

*Attrezzi, LLC v. Maytag Corp.*,
  436 F.3d 32 (1st Cir. 2006) ....................................................................................................8

*Brockmeyer v. The Hearst Corp.*,
  No. 01 CIV. 7746, 2002 WL 1402320 (S.D.N.Y. June 27, 2002)..........................................9

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985)....................................................................................................3

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co., Ltd.*,
  718 F. Supp. 2d 292 (E.D.N.Y. 2010) ....................................................................................5

*First Jewellery Co. of Can., Inc. v. Internet Shopping Network LLC*,
  99 Civ. 11239, 2000 U.S. Dist. LEXIS 794 (S.D.N.Y. Jan. 31, 2000) ...................................2

*General Cigar Co. v. G.D.M. Inc.*,
  988 F. Supp. 647 (S.D.N.Y. 1997) .........................................................................................2

*Hana Fin., Inc. v. Hana Bank*,
  547 U.S. 418 (2015)................................................................................................................5

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
  858 F.2d 70 (2d Cir. 1988).....................................................................................................7

*ILCO Corp. v. Ideal Security Hardware Corp.*,
  527 F.2d 1221 (CCPA 1976) ..................................................................................................5

*Ill. Tool Works Inc. v. J-B Weld Co., LLC*,
  419 F. Supp. 3d 382 (D. Conn. 2019) ..................................................................................10

*Ironhawk Technologies, Inc. v. Dropbox, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ..................................................................................................8

*Le Sportsac, Inc. v. K Mart Corp.*,
  754 F.2d 71 (2d Cir. 1985).....................................................................................................9

*Les Ballets Trockadero De Monte Carlo, Inc. v. Trevino*,
  945 F. Supp. 563 (S.D.N.Y. 1996) .........................................................................................2

*Life Techs. Corp v. AB Sciex Pte. Ltd.*,
    2011 WL 1419612 (S.D.N.Y. April 11, 2011) ...................................................................3

*Marcy Playground, Inc. v. Capitol Records, Inc.*,
    6 F. Supp. 2d 277 (S.D.N.Y. 1998) .................................................................................3

*Marks Org., Inc. v. Joles*,
    784 F. Supp. 2d 322 (S.D.N.Y. 2011) ..............................................................................2

*Monowise Ltd. Corp v. Ozy Media, Inc.*,
    2018 U.S. Dist. LEXIS 75312 (S.D.N.Y. May 3, 2018) ...................................................3

*Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*,
    2016 WL 3162118 (S.D.N.Y. June 2, 2016) ....................................................................8

*New Look Party Ltd. v. Louise Paris Ltd.*,
    2012 WL 251976 (S.D.N.Y. May 3, 2018) ......................................................................3

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..............................................................................3

*Paddington Corp. v. Attiki Imps. & Distribrs., Inc.*,
    996 F.2d 577 (2d Cir. 1993) .............................................................................................5

*Pfizer Inc. v. Astra Pharm. Prods., Inc.*,
    858 F. Supp. 1305 (S.D.N.Y. 1994) .................................................................................4

*Phillips–Van Heusen Corp. v. Calvin Clothing Co., Inc.*,
    444 F.Supp.2d 250 (S.D.N.Y. 2006) ................................................................................5

*RiseandShine Corp. v. PepsiCo, Inc.*,
    41 F.4th 112 (2d Cir. 2022) ..........................................................................................6, 7

*Transcience Corp v. Big Time Toys*, LLC,
    50 F. Supp. 3d 441 (S.D.N.Y. 2014) ................................................................................3

*Two Hands IP LLC v. Two Hands Am.*,
    563 F. Supp. 3d 290 (S.D.N.Y. 2014) ......................................................................3, 7, 9

*Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*,
    926 F.2d 1156 (Fed. Cir. 1991) ........................................................................................5

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
    No. 07 CIV. 5804, 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ........................................4

*W. E. Bassett Co. v. Revlon, Inc.*,
    305 F. Supp. 581 (S.D.N.Y. 1969), *aff'd in part, rev'd in part,* 435 F.2d 656
    (2d Cir. 1970) ...................................................................................................................5

*Wreal, LLC v. Amazon.com, Inc.*,
    38 F.4th 114 (11th Cir. 2022) ........................................................................................8

## I. Introduction

Shortly after Waggity filed its Motion for Preliminary Injunction, this Court ordered Defendants to show cause as to why a preliminary injunction should not issue. ECF No. 15. Defendants fail to set forth any facts that contradict this case of intentional trademark theft.

After Plaintiff declined to sell Defendants its valuable BARKBELLY mark, Defendants proceeded to adopt and launch a new competing product line of dog food and treats, including plant-based dog treats, using a nearly identical mark. Adding insult to injury, Defendants now claim that Plaintiff should not be able to avail itself of its rights under the Lanham Act and defend itself against a surely ruinous onslaught of competing advertising and infringing activity, simply because Plaintiff is a small company. Defendants' response reflects the willfulness of their actions and reckless disregard for Waggity's rights: it contains repeated disingenuous statements, tortured explanations for their conduct, and numerous erroneous legal arguments. In short, Defendants fail to "show cause" why their use of a nearly identical mark, for an identical good, with full knowledge, should not be enjoined.

## II. Plaintiff Timely Filed Motion For Preliminary Injunction

Defendants' brief opens with the false pronouncement that "Plaintiff waited nearly *four months* to seek a preliminary injunction." Not true. Plaintiff first became aware of the BARK IN THE BELLY dog food on September 10, 2025. Declaration of Kenneth Kramer ("Kram.") ¶ 2. Plaintiff first saw the dog food product, and the BARK IN THE BELLY treats, on display on September 27. *Id.* After identifying the infringing activity, Plaintiff moved as quickly as possible given its small size and lack of an in-house legal team, searching for counsel and carefully conducting a good faith investigation into its potential claims. *Id.* ¶¶ 3-6. The Complaint in this action was filed on November 18. ECF No. 1. The *same day*, Plaintiff's counsel informed Defendants' counsel that Plaintiff intended to file a motion for preliminary injunction if the parties

could not resolve the dispute. Declaration of Andrew Avsec ("Avs.") ¶ 2, Ex. B-1. Defendants' counsel and Plaintiff's counsel conducted three settlement discussions during the week of November 24. *Id.* ¶¶ 3-5. On November 26, the parties agreed that further discussions would not be productive, and Plaintiff reiterated that it would seek a preliminary injunction. *Id.* ¶ 6.

Plaintiff moved as quickly as practicable. The Thanksgiving holiday followed on November 27-28, and counsel for Plaintiff were out of the country November 30-December 4. *Id.* ¶ 7. The preliminary injunction motion was filed two business days later on December 8. ECF No. 9. The longest period, from discovering the BARK IN THE BELLY product to the filing of the Motion, was 2.9 months, but the period from encountering the product to putting Defendants on notice that the Motion would be filed should the parties not reach an agreement was a mere 7 weeks and 2 days—both periods show no delay.

Courts almost universally agree that there is no delay when preliminary injunction motions are brought less than three months after knowledge of the infringement. *See, e.g.*, *Les Ballets Trockadero De Monte Carlo, Inc. v. Trevino,* 945 F. Supp. 563, 574 (S.D.N.Y. 1996) (finding a two to three month delay did not preclude grant of preliminary injunction); *First Jewellery Co. of Can., Inc. v. Internet Shopping Network LLC*, 99 Civ. 11239, 2000 U.S. Dist. LEXIS 794, at *23-24 (S.D.N.Y. Jan. 31, 2000) (delay of 2 months is not "adequate to bar injunctive relief"); *General Cigar Co. v. G.D.M. Inc.*, 988 F. Supp. 647, 663 (S.D.N.Y. 1997) (delay of three months "is insufficient to negate [plaintiff's] claim of irreparable harm"); *see also* 3 Gilson on Trademarks § 14.02 (2025) ("a delay of three or fewer months will probably not result in a court denying a preliminary injunction"). Preliminary relief is not precluded even if the Court finds unexcused delay as "[d]elay is just one of several factors to consider." *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 332-36 (S.D.N.Y. 2011) (internal citations omitted) (granting preliminary injunction

despite nearly sixteen-month delay).

While Defendants cite to cases that suggest a shorter "delay" might be too long, each of those cases had unique facts and actually involved delays *significantly* longer than here. In *Citibank, N.A. v. Citytrust*, the court noted that the parties had a four-decade relationship, Citibank had significant resources, and the parties had a prior trademark opposition dispute. 756 F.2d 273, 274, 277 (2d Cir. 1985). While Defendants state that the *Citibank* case created a 10-week standard, Defendants' brief **omits** the second half of the relevant sentence in the decision, which added that Citibank waited "more than **nine months after [Citibank] received notice** through the press that Citytrust intended to open a Long Island branch." *Id.* at 276 (emphasis added). Defendants' other cases all involved longer delays as well.[1] Here, Plaintiff worked diligently since it learned of the infringement to seek relief from the Court.

### III. Plaintiff Has Demonstrated A Likelihood Of Success On The Merits

#### A. Plaintiff Owns Prior Rights in BARKBELLY Mark

To succeed on its claim for trademark infringement, Plaintiff must demonstrate prior rights in a valid mark and a likelihood of confusion. *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 329 (S.D.N.Y. 2010). As to the first element, Defendants concede that Plaintiff owns a valid mark and that Defendants are not challenging those rights. ECF No. 22 at 17. However, Defendants also confusingly argue that they have priority in the alleged marks "Bark" and "Stylized Bark Mark," and that such prior rights may be "tacked" to the instant BARK

---

[1] *Monowise Ltd. Corp v. Ozy Media, Inc.*, 2018 U.S. Dist. LEXIS 75312, at *2 (S.D.N.Y. May 3, 2018) (8 months from notice); *Transcience Corp v. Big Time Toys*, *LLC*, 50 F. Supp. 3d 441, 458 (S.D.N.Y. 2014) (13 months); *New Look Party Ltd. v. Louise Paris Ltd.*, 2012 WL 251976, at *11 (S.D.N.Y. May 3, 2018) (14 months); *Life Techs. Corp v. AB Sciex Pte. Ltd.*, 2011 WL 1419612 (S.D.N.Y. April 11, 2011) (over 9 months); *Two Hands IP LLC v. Two Hands Am.*, 563 F. Supp. 3d 290, at *7 (S.D.N.Y. 2014) (3 months and 3 weeks); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281-82 (S.D.N.Y. 1998) (8.6 months).

3

IN THE BELLY mark because of Defendants' ownership of a purported family of marks. *Id.* at 17-18. These allegations fail as both a matter of fact and law.

Defendants improperly combine and conflate two nuanced, and distinct, trademark doctrines. The test to determine the existence of a family of marks "turns on the **distinctiveness** of the common formative component and other factors, including the extent of the family's use, advertising promotion, and its inclusion in a number of registered and unregistered marks owned by a single party." *Pfizer Inc. v. Astra Pharm. Prods., Inc.*, 858 F. Supp. 1305, 1328 (S.D.N.Y. 1994) (emphasis added) (internal quotations and citations omitted) (finding no family of marks where common formative component was descriptive, not distinctive, and had not acquired secondary meaning). Defendants have repeatedly and consistently taken the position, including in the present case, that the wording "Bark" is weak and not distinctive for dog-related products.[2] Defendants' claim of a family of "Bark" marks is defective as a matter of undisputed fact and law.[3] *See Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 CIV. 5804, 2009 WL 959775, at *4 (S.D.N.Y. Apr. 8, 2009) ("Merely adopting and using—and even registering—a group of marks with a common feature does not create a family of marks . . . ").

The priority tacking doctrine involves an entirely different and unrelated test, where the priority of an original mark may be "tacked" to a revised mark *only* when the marks are "legal

---

[2] For many years, including just over a month ago, Defendants have argued that "[t]he wording BARK is not entitled to great weight for goods and services related to dogs," that the wording is "very weak," and that "[a]s a result of such widespread use of the wording BARK in connection with goods and services related to dogs, the public looks to other elements to distinguish the sources of such goods and services." Avs. ¶ 9, Ex. B-3. The USPTO relied on Defendants' representation that no one party owns "Bark" in granting the registration in the Stylized Bark Mark.
[3] Likewise, any claim of a "Bark in the __" family of marks necessarily fails as a matter of fact and law because such marks did not exist at the time Plaintiff filed its application for BARKBELLY. *See Pfizer*, 858 F.Supp. at 1329 (family of marks assessed at the time that the junior user entered the market).

equivalents." *See Hana Fin., Inc. v. Hana Bank*, 547 U.S. 418, 422 (2015) (internal quotations omitted). As an initial matter, Defendants do not and cannot allege exclusive rights in a "Bark" word mark. Otherwise, adding additional words to a mark, particularly additional distinctive words like "Belly," necessarily creates a different commercial impression and precludes a finding of legal equivalence.[4] *See, e.g.*, *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co., Ltd.*, 718 F. Supp. 2d 292, 309 (E.D.N.Y. 2010) (finding that "Americana Manhasset" cannot be tacked to "Americana"). Irrespective of whether Defendants established a family of marks, which they have not, the Stylized Bark Mark is clearly not the legal equivalent of the BARK IN THE BELLY mark.

### B. Defendants' Reckless Disregard for Plaintiff's Rights and Bad Faith Intent

Defendants try to play off the bad faith intent factors as being limited to whether they, the junior large corporation, have tried to ride on the goodwill of the senior small company: that is not the law. *See* ECF No. 22 at 27-29. Bad faith intent also can be shown, for example, by a reckless disregard for another's trademark rights. *See, e.g.*, *W. E. Bassett Co. v. Revlon, Inc.*, 305 F. Supp. 581, 585 (S.D.N.Y. 1969), *aff'd in part, rev'd in part,* 435 F.2d 656 (2d Cir. 1970) (finding intentional and fraudulent infringement after defendant attempted to acquire the trademarks of plaintiff); *Paddington Corp. v. Attiki Imps. & Distribrs., Inc.*, 996 F.2d 577, 587 (2d Cir. 1993) (finding absence of bad faith in copying trade dress to be "clearly erroneous" and reversing dismissal of trade dress infringement claim).

---

[4] *See Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991) ("Clothes That Work," does not create the same continuing commercial impression as "Clothes That Work. For the Work You Do."); *Phillips–Van Heusen Corp. v. Calvin Clothing Co., Inc.*, 444 F.Supp.2d 250, 255–56 (S.D.N.Y. 2006) (use of mark "CFM Calvin for Men" does not prevent abandonment of mark for "Calvin," standing alone); *Am. Mobilphone, Inc. v. Am. Paging, Inc.*, No. 90–1205, 1990 WL 177458, at *1 (Fed. Cir. 1990) ( "American Mobilphone Paging" did not create the same continuing commercial impression as "American Mobilphone"); *ILCO Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 1224 (CCPA 1976) ("Home Protection Hardware" and "Home Protection Center" create different commercial impression).

Defendants' argument that they were simply adding another term to their family of BARK-formative marks is not well taken. Defendants admit their prior knowledge of Plaintiff's rights in the BARKBELLY mark. ECF No. 24, Meek. Decl. ¶ 24. Defendants tried to acquire the BARKBELLY mark because doing so would add "more value" to Defendants' IP and their companies. *Id.* After Plaintiff rejected Defendants' proposition, Defendants filed four applications for the BARK IN THE BELLY word mark, all of which were summarily refused by the USPTO based on a likelihood of confusion with Plaintiff's mark. *Id.* ¶ 25. Undeterred, Defendants proceeded to launch their infringing brand. Defendants have now abandoned those applications, except for one, which now faces a final refusal. Avs. ¶ 8, Ex. B-2. Despite Defendants' awareness of over one thousand "Bark" marks in the pet industry, Defendants moved forward with BARK IN THE BELLY, and *not* aany other BARK ___ mark, because they assumed they could steamroll a small company without a fight, and not because of any good faith intentions.

### C. Plaintiff's Mark is Inherently Strong

Defendants' mischaracterize the Second Circuit decision in the *RiseandShine Corp.* case. Defendants tell the Court that the Second Circuit "evaluated the **commercial strength** of the plaintiff/allegedly smaller, senior user's mark in the reverse-confusion context." ECF No. 22 at 20 (emphasis added). However, in the *Rise* case, the Second Circuit specifically evaluated the **conceptual**, or "inherent," strength of the senior user's mark, and after finding the mark to be inherently weak (after being conceded as such by the senior user), found that the strength factor weighed against the plaintiff. *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120-124 (2d Cir. 2022) ("Given the inherent weakness of 'Rise' for coffee, the first factor does not favor Plaintiff."). *RiseandShine Corp.* is therefore limited to senior marks that (a) are conceptually weak and (b)

present insufficient evidence of secondary meaning.[5] This reverse is true here. Plaintiff's mark BARKBELLY is inherently strong and distinctive, as conceded by Defendants, who do not dispute the validity of the mark. ECF No. 22 at 17.

Indeed, the only purported evidence Defendants offer to challenge the inherent strength of Plaintiff's BARKBELLY mark—third party uses of "Bark"—supports *Plaintiff's* argument that the BARKBELLY mark is strong. Both parties agree that there are only *two* BARKBELLY marks in the market for pet food—Plaintiff's markand Defendants' infringing mark. *See* ECF No. 22 at 21-22.[6] Plaintiff's coined BARKBELLY mark registered without need to demonstrate secondary meaning. ECF No. 10 at 19-20. The inherent strength is further confirmed by Mr. Meeker, who admits that they desired to purchase Plaintiff's rights in "BARKBELLY" because Plaintiff's "IP" would provide "value" to Defendants. ECF No. 24, Meeker Decl. ¶ 24.

Defendants nonetheless argue that *Rise*, as well as *Two Hands IP LLC,* require the owner of an **inherently strong and federally registered** mark, like the Plaintiff, to provide evidence of secondary meaning to succeed in a trademark infringement claim, and that these cases establish a commercial strength threshold that Plaintiff must meet in order to avail itself of Lanham Act protection.[7] ECF No. 22 at 20-22. Not only is this inaccurate, Defendants' proposition would

---

[5] Notably, the Second Circuit expressly did "not resolve" the issue of whether the owner of a senior mark that is inherently weak can use acquired strength, or secondary meaning, to support a claim of reverse confusion. *Id.* at 124. Nonetheless, the facts here are not analogous.

[6] Defendants assert that Plaintiff must show acquired strength in the form of advertising dollars, a consumer study, or other materials, even though the BARKBELLY mark is inherently distinctive. ECF 22 at 21. For strong inherently distinctive marks at the preliminary injunction stage, the Second Circuit has long rejected that requirement. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988) (reversing refusal of preliminary injunction).

[7] The court in *Two Hands* evaluated the commercial strength, or secondary meaning, of the asserted **common law** mark "Two Hands." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 303-304 (S.D.N.Y. 2021). Here, Plaintiff owns a federal registration for BARKBELLY, which the USPTO registered without requiring any evidence of secondary meaning and is therefore inherently distinctive.

effectively eviscerate the doctrine of reverse confusion, because if the senior user had to establish a certain level of commercial strength, it would be unlikely to be swamped by the reputation of a junior user.[8] *See* Kram. ¶ 15 (Bark is a large, publicly traded company that reportedly spent $83 million the last fiscal year on advertising).

### D. Remaining Likelihood of Confusion Factors Strongly Favor Plaintiff

The remaining factors heavily favor Plaintiff. The marks are nearly identical, and Defendants' use of generic background elements on their product packaging related to dogs (and therefore the products at issue) exacerbate the likelihood of confusion. *See Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, 2016 WL 3162118, at *3 (S.D.N.Y. June 2, 2016). The parties sell competing dog consumables. The products are identical, or at least highly related, and are sold through the same or similar trade channels. Kram. ¶¶ 7-13.

Defendants twist in pretzels trying to argue that "plant-based" and "animal protein" dog food products are somehow not related, and to support this point, their CEO declared that "[o]ur BARK IN THE BELLY products are not plant-based snacks." ECF No. 22 at 25; ECF No. 24, Meeker Decl. ¶ 29. This is false. Not only are such products obviously related, but **Defendants *themselves* manufacture and sell both animal protein and plant-based dog treats under the BARK IN THE BELLY mark**, as do many other companies. Kram. ¶¶ 13-14. In addition, while Defendants contend that Plaintiff does not sell in the same channels, ECF No. 22 at 24-25, both

---

[8] ECF No. 10 at 20-21; *see also Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38-40 (1st Cir. 2006); *Ironhawk Technologies, Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021) (In reversing summary dismissal of a reverse confusion case, noting that the court assesses the strength of the junior user's mark and asks "whether it is able to swamp the reputation of [plaintiff's mark] with a much larger advertising campaign."); *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 129 (11th Cir. 2022).

parties sell on Shopify, and Waggity intends to expand to other online platforms as it scales. Kram. ¶¶ 9-10.

*Brockmeyer* and *Two Hands*, relied heavily upon by Defendants in their briefing, are again completely inapposite from the facts of this case. Defendants and Plaintiff are not just in the "same general industry," rather, Defendants and Plaintiff sell the *same* products—dog treats and food— to the same consumers—dog owners. ECF No. 10 at 17-18. Both *Brockmeyer* and *Two Hands* found that the relevant parties, restaurants and magazine companies, were not in proximity despite being in the same general industry because the plaintiffs in those cases did not show "any congruence" between the parties' audiences. *Two Hands*, 563 F. Supp. at 305-306 (comparing very different types of restaurants including seating options, types of food, upscale vs. fast food, etc.); *Brockmeyer v. The Hearst Corp.*, No. 01 CIV. 7746, 2002 WL 1402320, at *10-11 (S.D.N.Y. June 27, 2002) (plaintiff's magazine featuring sadomasochism and fetish culture and defendant's women's magazine found not to compete where it was "virtually impossible to find even a single image or article from the plaintiff's magazine that would not be jarringly out of place in [defendant's] magazine, and vice versa"). The facts are not analogous here, where the goods and target consumers are identical. *See Two Hands*, 563 F. Supp. 3d at 306 ("The central question [as to bridging the gap] is whether the plaintiff is likely to target the defendants' consumer base.").

Defendants also grossly misrepresent the evidentiary requirements regarding a showing of actual confusion.[9] There is no requirement in the Second Circuit for survey evidence of consumer confusion to be introduced before a plaintiff may obtain a preliminary injunction. *Le Sportsac, Inc.*

---

[9] In another egregious misstatement, Defendants state that "the Court may properly infer no likelihood of consumer confusion from this absence of survey evidence." ECF No. 22 at 25. The cited unpublished decision actually states that the absence of survey is *evidence* that *actual* confusion cannot be shown, but there is no inference about a likelihood of confusion.

*v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985); *see also Ill. Tool Works Inc. v. J-B Weld Co., LLC*, 419 F. Supp. 3d 382, 392 n.4 (D. Conn. 2019) (granting preliminary injunction; rejecting contention that the absence of a survey merited an adverse inference; finding that survey evidence only relevant to actual confusion (factor 5) and is "not required even for a showing of actual confusion"). Here, in just the short time that the parties have coexisted in the marketplace, Plaintiff has identified many instances of consumer confusion. ECF No. 10 at 22-23.

### IV. Plaintiff Has Shown Likelihood of Irreparable Injury, Balance of Hardships, and Public Interest Tips Demonstrably in Plaintiff's Favor

Defendants do not allege that they will be harmed if the preliminary injunction is issued, much less provide any evidence to support the harm. On the other hand, Plaintiff has been clear that its business—which it spent six years and countless hours building—may fail as a result of Defendants' infringement. Kram. ¶ 15. Using their vast $83 million annual advertising budget, Defendants will continue to flood the market with advertising for its BARK IN THE BELLY products, shaping consumer perception nationwide. *Id.* It is difficult to believe that any retailers familiar with Defendants' BARK IN THE BELLY products would agree to sell the BARKBELLY products, believing Waggity to be the infringer. *Id*. Plaintiff has courted investors who have advised that it will be extremely difficult or impossible to raise capital because Defendants' BARK IN THE BELLY mark has swamped the market. *Id.* ¶ 16. Defendants' actions existentially threaten Plaintiff's commercial activity and growth, and are certain to destroy Plaintiff's years of investment and goodwill in its company and brand. *Id*. ¶¶ 7-13 and 15-16; ECF No. 10 at 26-27. Finally, the fact that Plaintiff will not be able to control its reputation is critical and the harm that would result from an unknowing allergen exposure would be particularly damaging. ECF No. 10 at 25-26.

| | |
|---|---|
| Dated: December 17, 2025 | Respectfully Submitted |
| | CROWELL & MORING LLP |
| | By: */s/ Preetha Chakrabarti* |
| | Preetha Chakrabarti<br>Two Manhattan West<br>375 Ninth Ave<br>Suite 4500<br>New York, NY 10001<br>Telephone No. (212) 223-4000<br>Facsimile No. (212) 223-4134<br>Email: PChakrabarti@crowell.com |
| | Andrew J. Avsec (admitted *pro hac vice*)<br>Virginia Wolk Marino (admitted *pro hac vice*) CROWELL & MORING LLP<br>300 N. LaSalle Drive<br>Suite 2500<br>Chicago, IL 60654<br>Telephone No. (312) 321-4200<br>Email: VMarino@crowell.com<br>Email: AAvsec@crowell.com |
| | Ryan Seewald (admitted *pro hac vice*)<br>CROWELL & MORING LLP<br>1601 Wewatta Street<br>Suite 815<br>Denver, CO 80202<br>Telephone No. (303) 524-8660<br>Facsimile No. (303) 524-8650<br>Email: RSeewald@crowell.com |
| | *Attorneys for Waggity, LLC* |